Jonathan R. McDole

*v.*

Mary E. Kingsley *et al.*

*Filed at Ottawa November 9, 1896.*

1. SPECIFIC PERFORMANCE—*right of party in possession to enforce verbal agreement to devise land—waiver.* A party cannot enforce specific performance of a verbal agreement to devise lands, though in possession under the agreement, when, by a subsequent valid contract, he has waived his claim to the land.

2. CONTRACTS—*mutual concessions afford a valid consideration for a partition contract.* A contract under seal, by which each party, in consideration of the waiver by the others of their claims to an estate, agrees to accept a certain amount of the estate in full of all claims, is, in the absence of fraud, valid and binding.

3. SAME—*when equity will not set aside a partition contract as unjust.* The fact that one party under a valid partition contract will not receive as much as he claimed before the contract was made, is in itself not such injustice as will authorize a court of equity to set aside the contract, where the other parties are similarly affected.

4. SAME—*effect of revocation of arbitration clause of contract.* Where, under a partition contract, a party is to receive a specified amount of the estate and in addition thereto the value of certain improvements, to be determined by arbitration, his revocation of the part relating to arbitration will not revoke the contract.

5. JUDGMENTS AND DECREES—*decree must be consistent with averments and prayer of bill.* A decree for the amount of certain permanent improvements cannot be allowed on dismissal of a bill for specific performance, where the bill claims the land only, and makes no claim for permanent improvements.

Writ of Error to the Circuit Court of Kane county; the Hon. Henry B. Willis, Judge, presiding.

A. C. Little, R. G. Montony, and G. W. Avery, for plaintiff in error.

A. J. Hopkins, F. H. Thatcher, and F. A. Dolph, for defendants in error.

Mr. Justice Cartwright delivered the opinion of the court:

Plaintiff in error filed his bill December 1, 1891, in the circuit court of Kane county, against defendants in error, as executor and devisees of Rodney McDole, deceased, to compel the specific performance of an alleged verbal agreement made by his father, the said Rodney McDole. That agreement was alleged to have been made in 1880, and to have provided that complainant should go into possession of about two hundred and thirty acres, part of the home farm of his said father; that his father should help to move a small tenant house from another part of the farm, and contribute $100 to repair and rebuild it so that he could occupy it; that he should work the land while his father lived; that each should furnish half the stock and seed and each have half the proceeds until his father's death, when he should have the land upon payment of $2500 to the estate within two years from such death. Complainant went into possession of the premises and continued in such possession until his father's death, May 13, 1891, and he averred that his possession was taken and held under the alleged contract, and that he had made permanent improvements on the land under such contract. The answers denied the making of any contract, and insisted that complainant took and held possession as tenant of his father. The defendants also set up as a bar to the claim, a contract of settlement of the matters in controversy in respect to the land, made by all the persons interested, after the death of the said

Rodney McDole, for the purpose of finally settling and determining their respective rights, claims and interests. The bill was amended so as to allege that complainant had revoked the contract of settlement after it was entered into by him. There was a hearing, and the bill was dismissed for want of equity.

It will not be necessary to consider the question whether or not complainant proved the alleged verbal contract, for the reason that the compromise and settlement made after his father's death, before the filing of his bill, disposed of any claims he may have had, and constituted a bar to any relief under the alleged contract.

Rodney McDole left a last will and testament. Besides a few miscellaneous provisions, he gave to complainant $500 and to complainant's brother, Frank, $500, and all the rest, residue and remainder of his estate to his five daughters. He directed his home farm, of which the land in question was a part, to be sold by his executor, and the proceeds were to be equally divided among his said five daughters. Frank was claiming the remainder of the home farm not claimed by complainant, under a like verbal contract with their father, made at the same time, on condition that Frank should pay $4500 to the estate after his father's death. There had been litigation between Frank and his father, and the father had disputed that contract. The disposition of the land by the will was inconsistent with any right or claim of complainant or his brother, Frank, in the land. The five sisters claimed under the will, and denied all rights of complainant and Frank under the alleged contracts. For the purpose of adjusting and settling amicably all differences between the parties, the contract in question was entered into May 30, 1891, by all who had or claimed any interest in the premises or their proceeds or in the controversy. It recited that the disposition of the estate by the will was not entirely satisfactory to all the parties; that there had been talk among some of them of

contesting the will, and that to settle all differences with reference to the division of the estate and property, and their respective shares and interests in the same as heirs-at-law or legatees, it was mutually agreed that the will might be probated, and that instead of abiding by the will in the distribution, all the several amounts given and bequeathed to all should be placed in a gross sum by the executor and divided by seven. Each agreed, in lieu of his or her respective rights or interests in or to said estate as heir-at-law or legatee under the will, to accept one-seventh of said gross sum in full of all claims against said estate. It also recited that complainant and Frank claimed that they had made lasting and valuable improvements on the farms occupied by them, the title of which was stated to be in fee simple in the said Rodney McDole, deceased, and the parties mutually agreed that complainant and Frank should receive the value of such lasting and valuable improvements, to be paid by the executor. Three persons were named to fix the value of such improvements.

By this contract, executed under seal, the parties, each in consideration of the waiver of the claims of the others, waived his or her claim to more than one-seventh of the estate and agreed upon a settlement and division accordingly. It was apparently entered into in a spirit of fairness and for praiseworthy motives, and there is neither charge nor proof tending to cast suspicion upon it. No fraud, compulsion or other thing that could affect the contract in its procurement or execution has been alleged or proved, and there is no reason to suspect that it was not the product of complainant as much as any other party to it. The evidence shows that complainant's right, to say the least, was questionable and his claim was in dispute. The questions between the rival claimants were fair subjects of compromise and settlement. The mutual concessions for the prevention of litigation afforded a valid consideration for the agreement. (1 Par-

sons on Contracts, (5th ed.) 438; Bishop on Contracts, sec.
57; 1 Addison on Contracts, sec. 14.)  And such a consid-
eration is not only sufficient, but is looked upon with
great favor in a court of equity, and will be enforced.
*Hall* v. *Hall*, 125 Ill. 95.

Two reasons are given by counsel for claiming that
the contract was not binding.  The first is, that com-
plainant, after its execution, withdrew from it or revoked
it, and gave notice of the revocation before the amount
due him for improvements had been fixed by the arbitra-
tors.  This excuse was set up by the amendment to the
bill.  The notice proved stated that he withdrew from
the arbitration and revoked each and every stipulation
and agreement, and each and every act of his in relation
thereto.  The claim that the contract was thereby can-
celed is put upon the ground that the authority of arbi-
trators may generally be revoked at any time before an
award is made.  But the attempted withdrawal from the
arbitration, if effectual, could not affect other matters
settled in the contract by the parties and not submitted
to arbitration.  It could hardly be seriously contended
that a matter about which parties have agreed, upon
sufficient consideration, could be changed or revoked be-
cause there was some other matter submitted to arbitra-
tion.  It would be absurd to say that a lease, agreement
of partnership or other contract would be revocable be-
cause it provided for a valuation of property, or that a
policy of insurance could be revoked because of a pro-
vision for an estimate of loss or damage by arbitrators.
The contract did not submit to arbitration the question
whether complainant or his sisters should have the farm
or the improvements.  The parties settled that question
finally and absolutely for themselves, and the question
whether or not complainant could revoke the agreement
as to arbitration has no relevancy in a suit to obtain title
to the farm.  How the value of complainant's improve-
ments should be determined was foreign to the issue.

The other reason offered why the contract should not be allowed to stand is that it was unjust, because what complainant would receive under it would not be as much as he would get if he should succeed in establishing his alleged contract and should secure the farm. Counsel furnish an estimate of the value of the farm and of the assets and liabilities of the estate in support of this argument. The same figures show that the sisters gave up something when they waived the provisions of the will giving them the proceeds of the home farm and agreed to share with their brothers. If they had insisted upon their rights under the will, and had succeeded, complainant would have got less than he receives under the contract. The fact that each gave up some part of his or her claim affords the best reason for enforcing the contract.

It is also argued that the contract did not embrace the farm, because it related to the estate of Rodney McDole, and the interest acquired by complainant under his alleged contract did not belong to the estate and was not comprehended in the terms of the contract. This argument scarcely needs an answer. The disposition of the land by the will, and the claims of complainant's sisters thereunder, were inconsistent with any right or claim of his in the land. The agreement provided for putting the legacies, to be raised in part by a sale of the farm, into a gross sum, to be divided among the parties, and for allowance for improvements on the farm the title of which is admitted to be in fee simple in Rodney McDole, deceased. The argument is unsound.

Finally, it is claimed that complainant was entitled to a decree for the value of his permanent improvements in this suit, if he was not entitled to a deed of the farm. He could not have such a decree, because it would be inconsistent with the averments and prayer of his bill. By his bill he claimed the land, and nothing else.

The decree of the circuit court is affirmed.

*Decree affirmed.*