Aubrey O. Farley and Western Hair Goods Company, Appellees, v. Security Insurance Company of New Haven, Connecticut and Westchester Fire Insurance Company of New York, Appellants.

Gen. No. 43,437.

Opinion filed May 20, 1947. Released for publication June 9, 1947.

Samuel Levin, of Chicago, for appellants.

Leonard L. Spira and Simon Herr, both of Chicago, for appellees; Simon Herr, of Chicago, of counsel.

Mr. Presiding Justice Sullivan delivered the opinion of the court.

This is an action brought by Aubrey O. Farley and Western Hair Goods Company as plaintiffs to recover $5,924.13 from Security Insurance Company of New Haven, Connecticut, and Westchester Fire Insurance Company of New York, which amount defendants were alleged to have agreed to pay Farley for loss and damage resulting from a fire. The case was tried before the court and a jury. Two verdicts were returned by the jury. The first found "the issues for the plaintiff and against the defendant Security Insurance Company of New Haven at the sum of" $2,962.06 "plus 5% [interest] from date of loss." The second found "the issues for the plaintiff and against the defendant Westchester Fire Insurance Company of New York at the sum of" $2,962.07 "plus 5% [interest] from date of loss." Judgment for $2,962.06 "plus 5% interest from the date of loss or $344.69" was entered on the first verdict in favor of plaintiffs and against the defendant, Security Insurance Company of New Haven, and judgment was entered on the second verdict for $2,962.07 "plus 5% interest from the date of loss or $344.69" in favor of plaintiffs and against the defendant, Westchester Fire Insurance Company of New York. Defendants appeal.

It will be noted that the principal amount of each judgment represents one half of Farley's claim for $5,924.13, except that the amount of one judgment is one cent larger than the other. For convenience we will sometimes refer to these judgments, as well as to certain rubber stamp indorsements hereinafter mentioned, as being equal in amount.

The complaint alleged in substance that on May 11, 1942 each of the defendant insurance companies issued and delivered to plaintiff Farley a fire insurance policy in the amount of $4,000, which covered the contents of a beauty parlor operated by him at 7101–7109 Crandon avenue, Chicago, Illinois; that on

June 17, 1942, while said policies were in full force and effect, a fire occurred in Farley's beauty parlor, as a result of which he sustained loss and damage amounting to $6,385.86; that Farley was the owner of the personal property contained in the beauty parlor when the policies were issued and when the fire occurred; that "immediately upon the happening of said fire, the plaintiff gave written notice thereof to the defendants, or in the alternative, gave oral notice thereof, and pursuant to such oral notice the defendants appointed an adjuster to discuss said loss with the said plaintiff, thereby waiving the giving of written notice"; and that the actual cash value of the property described in the policies at the time of the fire was $9,581.69, the actual loss and damage thereto was $6,385.86 and the total fire insurance thereon was $8,000, which was the coverage of defendants' policies.

The complaint then alleged that on July 20, 1942 the defendants through their adjuster settled the loss and damage sustained by Farley with his adjuster for $6,385.86 but that as the result of Farley being a co-insurer with the defendants as to said loss the "amount of the recovery which he agreed to accept and which the defendants agreed to pay" was $5,924.13; that in accordance with such agreement each of the defendants furnished Farley with proofs of loss, which were immediately signed and sworn to by him and returned to them; and that thereafter the Security Insurance Company of New Haven caused an indorsement to be made on the policy of insurance issued by it stating that "This policy is hereby reduced $2,962.06 for loss of 6–17–42" and that the Westchester Fire Insurance Company of New York caused an indorsement to be made on the policy issued by it stating that "This policy is hereby reduced $2962.07 for loss of 6–17–42," which were the amounts each of said defendants had agreed to pay Farley.

The complaint also alleged that "the Western Hair Goods [Company] . . . is a party plaintiff herein

by virtue of having an interest in the property described in said policies of insurance and in accordance with indorsements in the said policies dated May 27th, 1942, as specifically appears thereon.''

The complaint further alleged that more than 60 days ''have elapsed since the receipt by the defendants of the said proofs of loss''; and that, ''although plaintiff has complied in all respects with the provisions of the policies, except in so far as the same have been waived, and although plaintiff has sustained the aforesaid loss and damage, the defendants have refused to pay for said loss and damage.''

The complaint concluded with a prayer by Farley for judgment against each of the defendants for $2,962.06 and interest thereon from September 20, 1942, which was 60 days after the proofs of loss were delivered to them.

An additional count to the complaint was filed but it is unnecessary to consider same.

While the insurance policies were attached to the complaint as exhibits and by reference made a part thereof, Farley did not predicate his right to recover on the policies themselves but on the alleged settlement agreement set forth in the complaint.

Defendants' answers admit that the policies were issued and delivered to Farley on May 11, 1942 but deny that the loss payable indorsements, dated May 27, 1942, with reference to the interest of the Western Hair Goods Company in the contents of the beauty parlor were on the policies either at the time they were issued or at any time prior to the fire and that they constituted a part of the insurance contracts. They deny that Farley was the owner of all the personal property in the beauty parlor either at the time the policies were issued or at the time of the fire and allege that some of the equipment located therein was subject to a conditional sales contract.

The answers also deny that defendants' adjuster agreed to pay Farley or his adjuster $5,924.13 or any

other amount in settlement of his fire loss of June 17, 1942 and allege that their adjuster had no authority to make any such settlement agreement. They further deny that plaintiff Western Hair Goods Company had any interest in the policies by reason of the loss payable indorsements, dated May 27, 1942, ''for any part of said alleged loss or damage by said fire by reason of the fact that said alleged respective endorsements on said policies and each of them was not a part of said respective policies on or prior to said alleged fire.''

Defendants' answers then alleged a number of affirmative defenses, which will be hereinafter considered.

For a proper understanding of the questions raised on this appeal it is necessary that the facts be set forth rather fully. Plaintiff Farley operated a beauty parlor at 7101–7109 Crandon avenue, Chicago, Illinois. On May 11, 1942 each of the defendant companies issued a fire insurance policy to him in the amount of $4,000, which covered the personal property contained in said beauty parlor. A large part of such personal property consisted of fixtures and equipment sold to Farley in 1939 by the Western Hair Goods Company on a conditional sale contract, upon which he owed a balance of $3,943, when the insurance policies were issued to him. When the policies were issued, they did not contain a loss payable clause with reference to the interest of Western Hair Goods Company in the contents of the beauty parlor.

On June 17, 1942 a fire occurred in Farley's beauty parlor which destroyed or damaged the major portion of its contents, including most of the items of personal property covered by the conditional sale contract of the Western Hair Goods Company. Bertram P. Schumacher, the president of said company, received notice of the fire and arrived at the premises while it was still burning. Farley was not in the city at the time of the fire. A day or two later Schumacher was pres-

ent when Farley employed the public adjusting firm of Spira-Blondell & Company as his adjuster. Frank L. Erion & Company was engaged in the business of adjusting fire losses but only for insurance companies. That company was engaged to adjust the loss in behalf of defendants by their "issuing agent," Associated Agencies, Inc. Nathan Spira of the Spira-Blondell Company, representing Farley, and Leonard Erion of the Erion Company, representing defendants, carried on negotiations for the adjustment of the fire loss until about July 20, 1942 with the result hereinafter shown.

Shortly after the fire Spira turned the policies over to Erion and, according to the latter, he attached the following rider to each of them pursuant to instructions received by him from defendants' issuing agent and "Atty. in Fact":

"Endorsement
May 27th, 1942

. . .

Subject to the stipulations, provisions and conditions contained herein, the loss, if any hereunder, is payable to Western Hair Goods Company as their interest may appear.

Associated Agencies, Inc., Agents

By W. C. Coe
Atty. in Fact"

Spira submitted to Erion an itemized list of the personal property contained in the beauty parlor at the time of the fire and of the property destroyed or damaged, as well as a statement of the loss as to each item. Erion had several conferences with Schumacher, the president of the Western Hair Goods Company, and they were unable to agree as to the value of some of the equipment which was destroyed or damaged. In this connection Schumacher testified that about three weeks after the fire he told Erion that "rather than to continue further with the discussion" he "thought it

would be best to have Mr. Spira and Mr. Erion adjust the thing out of my office, inasmuch as I was a personal friend of Mr. Erion's and I would prefer to have nothing to do with the adjusting."

Thereafter Spira and Erion continued their negotiations. Erion testified that Spira claimed that the cash value of all the personal property in the beauty parlor at the time of the fire was $9,581.69 and that the loss and damage to such property as the result of the fire was $7,115.84; that he and Spira as the result of a compromise agreement fixed the loss at $6,385.86; and that the loss as so fixed was reduced to $5,924.13 in accordance with a coinsurance clause contained in both policies.

Erion had his secretary prepare proofs of loss as to both policies in conformity with the foregoing agreed amounts. The proofs of loss recognized and set forth the interest of the Western Hair Goods Company under its conditional sale contract in the property destroyed and damaged by the fire. He delivered the proofs of loss to Spira so that they might be signed and sworn to by Farley. They were assigned and sworn to by Farley on July 20, 1942 and immediately returned to Erion.

While the Security company's policy was in the hands of defendants' adjuster, the following indorsement was affixed thereto with a rubber stamp: "This policy is hereby reduced $2,962.06 for loss of 6–17–42," and a similar indorsement was affixed with a rubber stamp to the Westchester company's policy.

Bertram P. Schumacher testified in plaintiffs' behalf on direct examination that he had a telephone conversation with defendants' adjuster Leonard Erion about five or six weeks after the fire, in which "I asked Mr. Erion when I could expect a check in payment of the contract, and he said, 'Well, you know they have 60 days in which to pay this claim and it takes a little time. We have concluded our work on them and I have O.K.'d them and sent them through for payment,

and you should be hearing from them in a short while' ''; that ''about two weeks later when the check failed to arrive . . . I called him again, and I said, 'What is holding up the check?' and he said, 'Well, we are through with it, it is in the hands of the County Adjusters, and it is customary that it passes through their hands and that is as much as I can tell you now' ''; and that ''in one of our conversations he [Erion] told me that Mr. Spira and he had reached a figure for settlement but that it was being cut down due to the fact that Mr. Farley was under-insured and that he became a co-insurer for a certain amount of money, and the amount of the claim was reduced to about $5900.''

Schumacher testified on cross-examination that he knew that the fire was under investigation by defendants and the National Board of Underwriters for at least six weeks after it occurred; that Erion told him ''about six months . . . after the loss was due for payment''; that ''it was up to the companies to decide whether they would pay after the investigation was made''; that about six weeks after the fire Erion told him that ''so far as he was concerned that he had put the claim through for payment'' and that ''the claim was adjusted and it was placed in the hands of the Cook County Board for payment''; that Erion told him that he settled the claim but that he did not tell him ''absolutely that the companies would pay''; and that Erion did not ''agree with him that it would be paid.''

Leonard Erion testified that upon being retained by defendants he ''proceeded with the customary routine of adjusting that loss''; that he caused the rubber stamp indorsement, which reads, ''This policy is hereby reduced $2962.06 for loss of 6–17–42,'' to be made on both policies; that affixing such indorsements to policies ''is routine matter simply, so far as office procedure is concerned''; that he never told Schumacher in any conversation he had with him that he

had "okayed" Farley's claim for the fire loss for payment or words to that effect; that he never agreed with Schumacher, Spira or Farley or anybody representing Farley "for the companies to pay this claim . . . or that they would pay it"; and that the only agreement he made with Spira was as to the amount of the fire loss.

It was stipulated upon the trial that "Farley did not personally agree with Mr. Erion on the amount of the settlement and loss or about its payment." In view of this stipulation Farley's testimony must be considered as having no bearing upon the alleged settlement agreement. For some reason not disclosed by the record Farley's adjuster Spira was not called as a witness.

It is first contended that "plaintiffs failed to prove any agreement, either special or implied, by the defendants to pay them for any loss sustained under the policies issued by the defendants to the plaintiff Farley."

Since it is conceded that Frank L. Erion & Company was authorized to represent defendants as their agent to adjust Farley's fire loss and that Leonard Erion agreed with Spira as to the amount of said loss, the only question presented for our determination under the instant contention is whether the evidence was sufficient to justify the jury's finding that defendants' adjuster Erion agreed with Farley's adjuster Spira to settle and pay such fire loss.

The only evidence in the record bearing on Erion's alleged agreement in defendant's behalf to pay the fire loss was the testimony of Schumacher and Leonard Erion and the rubber stamp indorsement caused to be placed on each of the policies by Erion, which reads, "This policy is hereby reduced $2962.06 for loss of 6–17–42." On the one hand there is the testimony of Schumacher that Erion admitted to him five or six weeks after the fire that he had "O.K'd" Farley's claims against the defendant insurance companies, that

he had "sent them through for payment" and that "he settled the claims." On the other hand there is the testimony of Erion that he never told Schumacher that he had "okayed" Farley's claims for payment or settled them, that the only agreement he made with Spira was as to the amount of the fire loss and that he never agreed with Spira, Schumacher or anybody else that the defendants would pay said loss.

Schumacher's testimony as to Erion's admission that he had settled the fire loss with Farley's adjuster Spira having been directly contradicted by Erion, the credibility of these witnesses became highly important and that was a matter for the jury to determine. It was also a matter of extreme importance for the jury to determine whether the foregoing testimony of either of these witnesses was corroborated, contradicted or impeached by any other credible evidence in the record. As has been seen, Erion not only denied that he made the admissions testified to by Schumacher but he denied that he made the alleged settlement agreement with Spira or anybody else representing Farley. Not only does his testimony in this respect stand alone and uncorroborated but it is contradicted by the aforementioned rubber stamp indorsement which he admittedly caused to be placed on each policy. In our opinion these indorsements are the most significant evidence in this case pertaining to the settlement agreement and they not only strongly corroborate Schumacher's testimony as to Erion's admissions but they refute Erion's testimony that he did not make said admissions and that he did not make the settlement agreement. That the defendants realized the significance of these indorsements is indicated by their several inconsistent attempts to account for their presence on the policies. On the trial their counsel argued that they were placed thereon by mistake. In their brief their counsel states that they merely amounted to a report by their adjuster of the amount of loss and damage "to be payable in the event the companies

determined that there is a legal liability.'' These attempted explanations were entirely frivolous and they are not in accord with Erion's testimony as to why he caused the indorsements to be placed on the policies. He did not testify that they were placed thereon by mistake or that they were in effect a report by him of the amount of the loss and damage. What he did say in his testimony was that the indorsements were placed on the policies ''as a routine matter simply, so far as office procedure was concerned.'' This attempted explanation by Erion of these indorsements is just as absurd as the explanations offered by defendants' attorney as to their presence on the policies. It certainly could not have been a routine matter of office procedure to place an indorsement on each of the policies indicating that the insurance coverage thereunder had been reduced to the extent of the agreed amount of the loss, unless there had been an agreement to settle and pay said loss. When Erion caused each of the policies to be indorsed with the legend, ''This policy is hereby reduced $2962.06 for loss of 6–17–42,'' he could not reasonably have done so, except as the result of an agreement by him to pay Farley the amount specified in said indorsements. The suggestion that such an indorsement would be placed on a policy as a simple routine matter as the result of a mere agreement as to the amount of the loss is fantastic and does not merit serious consideration. It was undoubtedly a simple routine matter of office procedure to place indorsements of this kind on policies where claims for fire losses had been settled and the conclusion is inevitable that that was the reason that such indorsements were caused to be placed on Farley's policies by Erion.

It is repeatedly asserted in defendants' brief that it was highly improbable that their adjuster, Leonard Erion, would agree to pay the fire loss when he knew that the fire was under investigation. It is sufficient answer to this argument to state that, regardless of

any investigation being made, it was even more improbable that Erion would have caused the aforementioned coverage reduction indorsements to be placed on the policies indicating that a settlement had been made to the extent of such reductions, if he had not agreed in defendants' behalf to pay the fire loss. It is interesting to note that, while defendants have injected into this case the matter of their investigation of the fire because of its purported suspicious origin, they have not even suggested in their answers that the fire occurred as the result of incendiarism.

■ It is urged that there was no consideration for an agreement by defendants to pay the fire loss. The policies themselves and Farley's agreement to accept less than the actual amount of his loss constituted sufficient consideration for defendants' agreement to settle said loss and to pay the amount claimed herein.

■ We think that the evidence warranted the jury in finding that defendants' adjuster agreed to settle and pay Farley's fire loss.

Defendants next contend that "Erion never had any authority to enter into any agreement on behalf of the defendants to pay the plaintiffs."

In support of this contention defendants rely largely upon the testimony of Andrew J. Smith, Cook county manager for the Westchester Fire Insurance Company, that he never gave Erion any authority to settle Farley's fire loss on behalf of his company. It was stipulated that one Hubbel of the Security Insurance Company would testify to the same effect on behalf of his company and that Clark Munn, Manager of Cook County Loss Adjustment Bureau, would testify to the same effect on behalf of both companies. The testimony of these witnesses was immaterial since the undisputed evidence shows that Erion was not retained to adjust Farley's fire loss by any of them but that he was appointed by defendants' issuing agent, Associated Agencies, Inc., whose authority to

so retain him in defendants' behalf is not questioned. Furthermore, there is no evidence in the record that Smith, Hubbel or Munn had any dealings with Erion either before or during the course of his negotiations in connection with the fire loss in question. The only other evidence presented by defendants in this regard was the testimony of Leonard Erion which was to the effect that he had no authority from either of the defendants to agree on their behalf to pay Farley's claim for the fire loss.

Farley did not submit any evidence as to Erion's actual authority. He claims that Erion had apparent authority to agree to settle and pay his fire loss and insists that "the authority of the adjuster is the authority of the insurance company unless there be a limitation on his authority known by the insured"; that "the defendants are bound by the acts of their agent within the apparent scope of their authority when the assured relies thereon and has no notice of limitation of powers"; and that "the defendant companies are bound by the acts of their adjusters even though the defendants without knowledge of the plaintiff limited their adjuster's authority."

The word adjust is defined generally as meaning "to settle" and as used in the field of insurance as meaning "to determine the amount to be paid under a policy in settlement of a loss." (Webster's New International Dictionary, Second Edition.) In *Fame Ins. Co. v. Norris,* 18 Ill. App. 570, the court said at p. 571:

"An adjustment is defined to be, 'the settling and ascertaining the amount of the indemnity which the insured, after all proper allowances and deductions have been made, is entitled to receive, and the proportion which each underwriter is liable to pay under the policy.' Marshall on Insurance, 617."

According to the foregoing definitions, the word adjust connotes authority to settle and it neces-

sarily follows that when Erion was designated as defendants' adjuster to negotiate with Farley as to his fire loss, he (Erion) ostensibly had authority to make the agreement in behalf of the insurance companies to settle and pay said loss. If, as Leonard Erion testified, his authority was limited to the mere ascertainment of the amount of the loss and to make recommendations to the insurance companies concerning its payment, Farley was not bound by such limitation because he had no notice of it. It cannot be seriously disputed that defendants' adjuster, Leonard Erion, acted within the scope of his apparent authority when he made the settlement agreement and that Farley and his adjuster relied on such authority, having had no notice of any limitation thereof. In our opinion the jury was justified in finding that defendants' adjuster had authority to make the agreement in their behalf to settle and pay Farley's fire loss.

The defendants set forth in their extensive answers a number of so-called affirmative defenses and they insist that ''the plaintiffs by failing to file replies to the defendants' answers thereby admitted any and all new matters by way of defense therein pleaded.'' While we do not think that this contention is seriously made or intended to be seriously considered, we will discuss it briefly.

The first four of the five alleged affirmative defenses concerned asserted violations by Farley of various provisions of the policies. It cannot be said that such alleged violations were admitted by reason of plaintiffs' failure to reply to defendants' answers, inasmuch as the complaint alleged that ''plaintiff has complied in all respects with the provisions of the policies'' and made the policies a part of said complaint. In view of this allegation in the complaint, it was unnecessary that plaintiffs reiterate by way of reply Farley's full compliance with all the provi-

sions of the policies. It should also be stated that two of the alleged violations of provisions of the policies contained in defendants' answers raised issues that presented questions of law only and required no reply in any event. As to the other two provisions alleged to have been violated, defendants did not present a particle of evidence.

Defendants' fifth affirmative defense related to an assignment made by Farley to Spira-Blondell & Co. The evidence showed that Farley made an assignment "from the proceeds" of his policies to his adjuster to the extent of the fees he contracted to pay said adjuster and he attached the assignment or a copy thereof to the proofs of loss he delivered to each of the defendants. Defendants contend as to their fifth affirmative defense that "plaintiff Farley had made an assignment of the proceeds of the policies involved for loss sustained in a sum equal to the amount of his contract with Spira-Blondell & Co., and therefore had no right under any circumstances to the entire amount of the loss sustained." It is readily apparent that the defendants' answers insofar as they pertained to their fifth alleged affirmative defense required no reply because the only issue raised thereby presented a question of law only.

Since the affirmative defenses alleged in the answers were not admitted and since defendants made no attempt upon the trial to have such defenses considered and determined, they must be held to have abandoned them. Furthermore, defendants waived all of these pretended defenses by their agreement to settle and pay Farley's fire loss.

The defendants urge that the loss payable clause with reference to the interest of the Western Hair Goods Company, "not being a part of the policies of insurance at the time of the loss, necessarily, therefore, was not a part of the contracts of insurance herein involved." While it is true that at the time of

the fire on June 17, 1942 neither of the policies contained a loss payable clause covering the interest of the Western Hair Goods Company in the contents of the beauty parlor, shortly after the fire the defendants by their attorney in fact prepared two riders containing such a clause, dated said riders May 27, 1942, which was before the fire, and caused their adjuster Erion to attach one of them to each of the policies. It does not appear why the defendants dated these loss payable indorsements prior to the fire and placed them on the policies but they did so and they are bound by these indorsements just as effectively as if they had been on the policies before the fire. In the absence of any showing to the contrary, it is reasonable to assume that these loss payable indorsements covering the interest of the Western Hair Goods Company in the property destroyed and damaged by the fire would not have been dated as they were by defendants and placed on the policies unless there was an obligation on their part to so date them and make them a part of the insurance contracts.

Defendants contend that "plaintiffs alleged a waiver of the requirement contained in both policies of insurance that the insured give immediate written notice of any fire loss and failed absolutely to prove any such waiver." Both policies contained the following provision: "The insured shall give immediate notice, in writing, to this Company of any loss or damage . . . ." It is conceded that plaintiff did not comply with this provision. However, there can be no question but that the defendants waived compliance therewith by sending their adjuster immediately after the fire to negotiate a settlement of the fire loss with Farley and by making the settlement agreement with his adjuster.

Defendants assert that "the verdicts in allowing five per cent on the amount of the loss from the date of loss had no factual basis whatsoever and

were in clear violation of the provisions of the policies of insurance involved." While it is true that the jury mistakenly stated in its verdicts that interest was being allowed at five per cent on the amount of the loss "from the date of loss," this mistake was rectified by the trial court in the judgment orders wherein the interest on the amount of loss was computed from September 20, 1942, which was 60 days after defendants received the proofs of loss.

Defendants contend that "the argument of plaintiffs' attorney before the jury was highly inflammatory and prejudicial and constituted reversible error." We have carefully examined that portion of the closing argument of plaintiffs' attorney which defendants criticize, as well as the argument to the jury of defendants' attorney, and are impelled to the conclusion that the argument of plaintiffs' attorney was a fair response to the argument of defendants' attorney.

It is also contended that the trial court erred in refusing to give to the jury 13 instructions tendered by the defendants. It is impracticable within the confines of this opinion to discuss these 13 instructions at length. However, we have carefully examined and considered them. Nine of them—3, 5, 8, 10, 11, 13, 15, 16 and 17—deal with the question of agency and were properly refused because they did not correctly state the law applicable to the facts in this case. Instructions 4, 6, 7 and 9 sought to limit recovery to Farley's interest in the property destroyed and damaged. These instructions were properly refused. They sought to exclude from recovery the loss to the property in which the Western Hair Goods Company had an interest.

Defendants also assert that the trial court erred in giving four instructions—1, 2, 4 and 5—tendered by plaintiffs. These four instructions correctly stated the law applicable to the apparent authority of an agent and they were properly given.

Defendants finally contend that ''the judgments entered herein on behalf of both plaintiffs were clearly erroneous and void inasmuch as they did not conform either to the pleadings or the proof or the verdicts.'' As has been seen, the verdicts found ''the issues for the plaintiff'' in the singular without indicating which plaintiff and the trial court entered judgments on the verdicts in favor of both plaintiffs. As heretofore shown, the complaint was directed solely to Farley's right to recover on the alleged settlement agreement and the prayer of the complaint asked judgment only in his behalf against the defendants. It is true that the Western Hair Goods Company was named as a plaintiff in the complaint but it requested no relief therein. The only allegations in the complaint with reference to said company were that it had an interest in the contents of the beauty parlor by reason of its conditional sale contract and that such interest was protected under the policies by the loss payable indorsements which defendants attached to the policies. The only issues joined by the complaint and answers and presented to the jury for its determination were whether the settlement agreement had been made between defendants' adjuster and Farley's adjuster and whether defendants' adjuster had authority to make such an agreement. The evidence presented to the jury was sufficient to show that the agreement was made, that it covered not only Farley's loss but the loss of the Western Hair Goods Company and that defendants' adjuster had the authority to make the agreement. As this case was tried and argued to the jury, Farley was the only plaintiff for whom a verdict could have been returned because defendants' agreement to pay the fire loss was made with him. There can be no question but that it was the intention of the jury to find the issues in favor of the plaintiff Farley. There was no verdict that the jury could have properly returned as to the Western Hair Goods Company since the latter made no claim

that it was a party to the agreement and it did not ask for any relief in the complaint. With the case undisposed of by the jury as to the Western Hair Goods Company the trial court apparently was in doubt as to the proper course to pursue as to that plaintiff and it resolved the doubt, as has been seen, by entering judgments on the verdicts in favor of both plaintiffs. Did the action of the trial court in this regard constitute reversible error? We think not.

The agreement with Farley as the insured contemplated the payment not only of his loss but that of the Western Hair Goods Company. If the judgments had been entered in favor of Farley alone, as they should have been, the defendants would have been bound in any event under the loss payable clause in their policies to protect the interest of the Western Hair Goods Company by paying the amount of its loss and deducting same from Farley's judgment. Under the judgments as entered defendants are only obligated to pay the amount which they agreed to pay for Farley's loss and in paying the judgments they may relieve themselves from any possibility of double liability by securing proper releases and having the judgments properly satisfied. While the trial court did err in entering judgments for both plaintiffs, under the facts and circumstances of this case we consider such error harmless and not prejudicial.

Other grounds are urged for reversal but in the view we take of this case we deem it unnecessary to discuss them.

There is no question of incendiarism in this case. Farley purchased a $4,000 policy from each of the defendants as a protection against fire loss and paid the premiums thereon. The policies were in full force and effect when the fire occurred. The interest of the Western Hair Goods Company in the property insured was protected by a loss payable clause in each policy. Defendants' adjuster made the settlement

agreement in the light of the interest of both Farley and the Western Hair Goods Company in the property destroyed and damaged by the fire. In some respects this case was poorly tried but in our opinion no errors are disclosed by the record that would warrant a reversal.

For the reasons stated herein the judgments of the circuit court of Cook county are affirmed.

*Judgments affirmed.*

FRIEND and SCANLAN, JJ., concur.