Ernest F. Rodewald, Individually and Executor of Last Will and Testament and Codicil of William Rodewald, Deceased et al., Appellees, v. Randolph Mutual Insurance Company, Appellant.

Term No. 4703.

Opinion filed January 26, 1948.
Released for publication February 26, 1948.

E. H. WEGENER, of Chester, and L. R. STEWART, of Murphysboro, for appellant.

ISAAC K. LEVY and DAVID B. LEVY, both of Murphysboro, for appellees.

MR. JUSTICE SMITH delivered the opinion of the court.

This is an appeal by the Randolph Mutual Insurance Company, defendant appellant, hereinafter referred to as the defendant, to reverse a judgment in favor of Ernest F. Rodewald, individually and as executor of the last will and testament and codicil of William Rodewald, deceased, Josephine Childers and William Rodewald, Jr., plaintiffs appellees, hereafter referred to as the plaintiffs.

The plaintiffs' complaint is based on an alleged adjustment made by the defendant on two policies of insurance issued by it, one, upon a six room dwelling house in the amount of $3,000, and the other upon a cellar house in the amount of $150, certain household furniture in the amount of $1,000 and a player piano in the amount of $75.

William Rodewald died testate in 1942, and the above property was acquired by the plaintiffs by inheritance and by conveyance from one of the heirs. All of the property was destroyed by fire March 15, 1944. A few days after the fire, Ernest F. Rodewald notified the secretary of the defendant company of the

fire and he told him to see Fred Anghouse, their adjuster. Anghouse examined the fire loss and on March 25, 1944, met with Ernest F. Rodewald and made an adjustment of the fire loss on a printed form furnished by the defendant, entitled ''Appraiser's Estimate.''

The printed form, which was filled out by Anghouse, follows: ''I, Fred Anghouse, one of the appraisers of the Randolph Mutual Insurance Company having been sent by the president of said company to adjust the loss of property sustained by William Rodewald on 15th day of March, A. D. 1944, in Township O, Range 4, County of Jackson, State of Illinois, hereby report that I went to the premises and took the affidavit of Claimant and hereupon examined into the extent of his loss on property insured with said company and find the same to have been occasioned by fire and I estimate the damage to said property item after item in regular rotation as on Policy No. 24577 as follows: Policy for dwelling not at hand.

| 2 Story 6 Room House | loss | $3000.00 |
| Household furniture | loss | 406.00 |
| Piano and organ | loss | 50.00 |
| Cellar House | loss | 150.00 |
| | Total | $3606.00 |

Date March 25—1944.''

On the back of said printed form appears the following:

''I hereby acknowledge myself to be fully satisfied with the above estimate, subject to the approval of the Board of Directors of the Randolph Mutual Insurance Company.

E. F. Rodewald, Adm. Claimant.''

This is followed by the affidavit of E. F. Rodewald, as claimant, in which he states the date the property was destroyed, that it was owned by William Rodewald and that the origin of the loss was unknown.

There is also an itemization of the particular articles of household goods on a separate sheet which bears the same filing mark of the secretary of the defendant. The policies provided for payment of two-thirds of the loss suffered.

Anghouse testified that he knew William Rodewald was dead at the time of the loss, but that he inserted his name because the policies were issued in his name. Anghouse had been an adjuster for the defendant for about twenty years, and he testified that he appraised and adjusted this loss the same as other losses.

The adjustment was received and filed by the defendant March 30, 1944, and it was not until five or six months later that the plaintiffs knew that there was any dispute about the matter or that the defendant was not satisfied with the appraisement as submitted by Anghouse. At this time the secretary of the defendant informed Ernest F. Rodewald that the matter was in the hands of their attorney.

The policies contained on their back the following: ''Caution-Notice. Certain things void your policy unless and until written consent of the company is obtained. Such consent must be endorsed hereon or added hereto and conform and be subject to all the terms and conditions of this policy. If any of the following conditions exist or are about to occur in connection with your property insured under this policy, take the matter up immediately with the Company at its Home Office and thereby avoid trouble in event of loss . . .

3. If your building become vacant or unoccupied.

4. If deed is not in your name.

The above conditions are illustrative of the standard provisions contained in the lines from 1 to 196 of the policy.''

The policies also contained in their standard provisions clauses to the effect that the company shall not be liable for loss or damage occurring while a de-

scribed building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of ten days, or if the insured fails to furnish formal proofs of loss within sixty days after the loss; or if there was a change in interest, title or possession of the subject of insurance, unless consented to in writing by the company; or in case of any fraud or false swearing by the insured touching any matter relating to the insurance or subject thereof, whether before or after loss.

The buildings were unoccupied about 20 days prior to the loss, and no formal proofs of loss were submitted by the plaintiffs.

The plaintiffs' action is based on the adjustment as made by Anghouse and on the premises that all of the above stated conditions of the policies were waived by defendant by the adjustment.

The defendant asked for a directed verdict at the close of the plaintiffs' evidence, and again at the close of all the evidence, both of which were denied and the jury returned a verdict in favor of the plaintiffs for $2,660.43, which included two-thirds of their loss as fixed by the adjustment and interest at five per cent from the date suit was filed. Defendants filed a motion for judgment notwithstanding the verdict and in the alternative for a new trial, both of which were overruled and judgment was entered on the verdict.

The defendant introduced certain evidence in an effort to establish a conspiracy on the part of two of the plaintiffs, and one Frank Shack, to burn the buildings destroyed by fire, but this evidence was meager and unconvincing. In our opinion, it was not sufficient to justify the trial court in disturbing the verdict and this evidence need not be considered here.

The principal question raised by this appeal is whether the action taken by Fred Anghouse, as adjuster for the defendant, amounted to an adjustment of the loss suffered by the plaintiffs.

We are of the opinion that the plaintiffs' loss was adjusted by Anghouse. In his testimony he stated that he adjusted this loss in the same manner he had adjusted other losses and it is shown he had been employed by the defendant about 20 years. In the printed form used by Anghouse he was directed, by the president of the company, to adjust the loss and a definite figure was arrived at by him. The amount stated was acknowledged as entirely satisfactory by E. F. Rodewald, Adm. Claimant. The defendant contends that the words "subject to the approval of the Board of Directors of the Randolph Mutual Insurance Company," which preceded E. F. Rodewald's signature show that this form was merely an estimate and not an adjustment, and that it was not binding upon it, until passed upon by its directors. The evidence does not show whether the directors ever accepted or rejected it but in either event it was not disclosed to the plaintiffs that it was being questioned until five or six months later. During this period the plaintiffs were led to believe that the matter was settled and completely adjusted.

The action taken by the defendant, through its agent Anghouse, was the procedure usually followed by it in making adjustments and also the procedure customarily followed by other insurance companies. The question of whether the action taken by Anghouse was in fact an adjustment of the plaintiffs' loss was submitted to the jury and we are of the opinion that the trial court properly refused to direct a verdict on this question.

The evidence does not reveal any fraud or mistake in the making of the adjustment and the plaintiffs properly brought their action upon the adjustment rather than upon the policies.

This conclusion is supported in the case of *Illinois Mut. Fire Ins. Co. v. Archdeacon,* 82 Ill. 236, which was an action upon an adjustment in which the ad-

juster had indorsed on the policy these words, "Claim allowed under within policy, for three thousand dollars, being total loss on proofs submitted," and signed his name. The policy contained a provision that suit on the policy must be brought within one year and the court in upholding a suit brought after the one year limitation said at page 239, "By the terms of the adjustment, there was found due appellee a certain sum, which was indorsed on the back of the policy. While the company did not, in express terms, promise to pay the amount, yet, under the agreement, which was signed by the company, that a definite amount was due, the law will imply a promise to pay.

If, then, the loss was adjusted and a balance struck, can it be recovered under a count in the declaration on an amount stated?

The answer to this will be found in Chitty on Pleading, Vol. 1, page 358, where the author says: 'The present rule is, that, if a fixed and certain sum is admitted to be due to a plaintiff, for which an action would lie, that will be evidence to support a common count upon an account stated.'

From this it follows that the action, predicated, as it was, upon the new contract, was not barred by the one year clause in the policy. The contract of adjustment waived and abrogated that provision. After the adjustment, the rights of the parties became fixed. No affirmative act was required on the part of appellees, to protect their rights. The insurance company was indebted to them in a definite and fixed sum of money, which it was bound to pay, and nothing short of the time prescribed by the general limitation laws of the State would bar their action."

The defendant contends that the plaintiffs failed to comply with the standard provisions of the policy which require occupancy of the buildings; formal proof of loss within 60 days; written consent by the company upon change of interest or title; or in case of fraud or

false swearing. The latter two standard provisions are not urged on this appeal and appear to be not well founded from the evidence introduced and they will not be discussed here.

In regard to the vacancy and the furnishing of formal proofs of loss provisions of the policies, the evidence shows that the buildings became vacant about 20 days prior to the fire, which was 10 days more than the 10 day limitation, and that no formal proofs of loss were submitted. The question to be considered is whether the defendant waived these provisions by making an adjustment of the loss. These provisions were put in the policies for the benefit of the company, and could be waived by it and whether or not they had been waived was a proper question to be submitted to the jury. (*Western Underwriters Ass'n v. Hankins,* 221 Ill. 304; *Fray v. National Fire Ins. Co. of Hartford,* 341 Ill. 431, 440.)

The adjustment made by Anghouse and his itemization of the loss certainly led the plaintiffs to believe that the defendant considered the policies in effect and that it was unnecessary for them to furnish formal proofs of loss. (*Elder v. Insurance Co. of North America,* 206 Ill. App. 172.) It is not the policy of the law to favor a forfeiture, but it is strictly in accord with legal principles to hold that a breach of a particular provision shall be waived or abandoned by acts which recognize the continued validity of the policy. (*Bennett v. Union Cent. Life Ins. Co..* 203 Ill. 439, 449.) We believe that the evidence submitted in this case was sufficient to warrant the jury in finding that the above standard provisions of the policies had been waived by the defendant through the action of their agent, Anghouse.

The defendant contends that under such a rule it would be necessary for it to litigate its liability prior to making an adjustment of a loss. However, the de-

fendant was not precluded from withholding an adjustment until it had completed its investigation of the loss. In *Wagner v. Dwelling-House Ins. Co.*, 143 Pa. St. 338, the court said, "In such a case, the action is not upon the policy, but upon the agreement to pay. Neither, in such case, can it set up a breach of warranty or of any of the conditions of the policy in defense, for adjusting the loss and promising to pay it is a waiver of all breaches on the part of the assured, and of all defenses which might have been made, except for such waiver. A breach of warranty or of any condition in the policy must be insisted on when the claim is made, and before an agreement to pay the loss has been made. 2 Woods Ins. par. 450. In other words, after an adjustment or compromise of the claim, it is too late to impale the plaintiff on any of the sharp conditions some times found in policies of insurance."

The defendant dwells at length on the case of *Oberman v. United States Fire Ins. Co. of New York*, 313 Ill. 172. In this case the adjuster represented several insurance companies and he testified that after considerable negotiation with the adjuster for the insured they agreed on the amount of the loss, and that amount was fixed at $35,000 in the event there was liability. The opinion in the case contains this language: "The fact that the amount of loss has been adjusted does not necessarily entitle the assured to recover that amount. The adjustment of itself merely amounts to an admission on the part of the insurer that the sum fixed is due the insured is to have anything under the policy, and does not stop the insurer from setting up fraud, breach of conditions of the policy or other acts of the insured that operate to defeat the insurer's liability. . . . The parties having agreed in this case as to the amount due in the event of liability, and there being no claim of fraud or mistake in fixing the

amount, it stands as an admission of appellant, and, being unimpeached and uncontradicted, is sufficient proof of the amount due to sustain the judgment.''

In the case at bar the adjustment did not provide that the amount was fixed in event there was liability. There was an unqualified adjustment of the loss and the fact that the acknowledgment signed by E. F..Rodewald stated that he was satisfied with the above estimate, subject to the approval of the board of directors, does not bring this case within the language set out in the *Oberman* case.

The defendants take exception to certain instructions given and refused, but it is unnecessary to discuss them in detail, as, taken as a whole, they presented the case to the jury without prejudice to the defendants.

For reasons above assigned the judgment of the trial court is affirmed.

*Judgment affirmed.*

BARTLEY, P. J., and CULBERTSON, J., concur.