DAN HAYES BOILER & REPAIR CO., Plaintiff, *v.* ILLINOIS MASONIC MEDICAL CENTER, Defendant.—(ILLINOIS MASONIC MEDICAL CENTER, Third-Party Plaintiff-Appellant, *v.* ST. PAUL INSURANCE COMPANY, Third-Party Defendant-Appellee.)

(No. 60338;

First District (3rd Division)—July 3, 1975.

Righeimer, Righeimer & Martin, of Chicago, for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, of Chicago (William J. Schaefle, James T. Ferrini, and William J. Sneckenberg, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Dan Hayes Boiler & Repair Co., filed an action in the circuit court of Cook County for money due it for repair work to a boiler owned by the defendant, Illinois Masonic Medical Center (hereinafter the Hospital). The Hospital, in turn, filed a third-party complaint against St. Paul Insurance Company (hereinafter St. Paul), its insurer, for the amount claimed by plaintiff. Prior to trial, plaintiff and the Hospital agreed to entry of judgment against the Hospital in favor of plaintiff in the amount of $3,372.00. Consequently, the present jury trial was concerned only with the third-party complaint. At the close of the Hospital's case, the trial court granted St. Paul's motion for a directed verdict. This appeal follows.

The Hospital had a paid-up property insurance policy with St. Paul. Under its terms, the Hospital was protected against loss caused by fire, lightning, and explosion, among others. The contract contained the usual notice and suit-limitation provisions for the benefit of the insurer. The insured was required to provide the insurer with written proof of loss within 60 days of such occurrence and to file any suit for a claim within 12 months of the loss.

The Hospital apparently did not comply with these latter two provisions. However, this action was predicated upon an oral adjustment allegedly made with with St. Paul and not upon the express terms of the policy. In its answer to the third-party complaint, St. Paul denied the existence of an oral agreement, and affirmatively asserted the notice and suit-limitation provisions as defenses. After the trial court denied pretrial motions *in limine* by each side to restrict the proof offered at trial to its theory of the case, the Hospital presented its case.

David Lindquist, the Hospital's chief engineer, testified that he was notified of possible damage to the Hospital's number one boiler sometime in December, 1969. He examined the boiler and discovered an external bulge on one of its sides. In order to determine the extent of damage, he arranged with plaintiff to cut a section out of the boiler.

On February 20, 1970, plaintiff cut out a section of the boiler's casing and removed the insulation, thereby exposing the damage, a crack in the refractor. Among those present were Lindquist, Mr. Mooney, plaintiff's general manager, and Mr. Lama, a claims adjuster for St. Paul. Upon viewing the damage, Lindquist realized that repair would be necessary. Plaintiff then patched up what it could and welded the casing back on.

Lama later asked Lindquist if he had any objection to plaintiff doing the work. When Lindquist replied that he did not, Lama requested him to ask Mooney to submit a bid. Lindquist complied, and a bid was sent by Mooney to Lama. Lama contacted Lindquist and informed him that

he needed a further cost breakdown on labor and materials. Mooney and Lama contacted each other, and Mooney supplied the additional information. Lindquist testified further that sometime in March Mooney telephoned him and advised him that he had received the necessary authorization from Lama to repair the boiler. In view of the weather, the damaged boiler had to be kept available on a stand-by basis. Therefore, the work was finally performed late in May.

Richard Mooney testified that part of his management duties for plaintiff involved giving estimates, ordering materials, and supervising work completion. After viewing the damaged Hospital boiler, he believed that the casing, insulation, and refractor would all have to be replaced. Mooney forwarded to Lama an initial bid to do the repair work and a later more detailed breakdown. He spoke to Lindquist on several occasions, at which times Lindquist would inquire whether Mooney had received Lama's authorization to proceed with the work. In May Lindquist expressed some anxiety as to whether the boiler would be repaired in time for the cooler weather. Mooney telephoned Lama, and relayed Lindquist's concern. Lama replied that Mooney had his authorization "to go ahead and do the repair work." The work was begun on May 17 and completed on May 25.

Howard Lama, called by the Hospital as a witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60), testified that as a claims adjuster for St. Paul he received, investigated, and, when necessary, adjusted claims presented by policyholders. He handled the Hospital's claim in this case. At the time the interior of the boiler was inspected, Mooney detailed what had to be done to make the necessary repairs, and it "sounded realistic" to Lama. He took photographs of the damaged area. Lama admitted requesting initial and follow-up bids from Mooney to do the repair work, but claimed that his conversations with Mooney, including that of May 7, dealt only with Lama's requests for an "opinion" from Mooney. After the work had been completed and a bill sent to Lama by plaintiff, Lama called Mooney and asked why the bill had been sent to him. Mooney replied that St. Paul was responsible for payment. Lama did not discuss the matter further and disregarded the original and subsequent repair bills.

Recalled as a witness for the Hospital, Mooney testified that he recollected that the only time Lama asked for an opinion as to the cause of the damage to the boiler was sometime in May. In reply Mooney sent a letter to Lama dated May 22, 1970, in which he stated that he had no conclusive evidence as to the cause of the damage. On cross-examination, Mooney stated that Lama's request for an opinion probably occurred

just prior to the time he sent his letter in response. He testified on re-direct examination that he was consistently reminded by Lindquist to obtain Lama's authorization before proceeding with the work.

At the conclusion of the Hospital's case, the trial court granted St. Paul's motion for a directed verdict.

The Hospital contends on appeal that the trial court erred in directing a verdict against it since it had presented a factual issue for the jury as to an oral settlement of the claim. It also contends that the trial court improperly barred its attempts to introduce into evidence the agreed-upon price for repairs.

■■ A valid adjustment of a disputed insurance claim is enforceable in the courts. (*Millers' National Insurance Co. v. Kinneard* (1891), 136 Ill. 199, 26 N.E. 368.) The compromise settlement may be oral. (*Country Mutual Insurance Co. v. Drendel* (1969), 116 Ill.App.2d 466, 252 N.E.2d 757.) To be enforceable, the agreement must contain all the essential elements of a valid contract. 16 Couch Encyclopedia on Insurance Law § 59:14, at 150 (2d ed. 1966).

■■ At trial, St. Paul denied the existence of a valid adjustment and raised the affirmative defenses included in the policy issued to the Hospital of lack of timely notice of the loss and failure to institute suit within 1 year of the loss. Of course, if the Hospital introduced sufficient evidence at trial to create a prima facie case of recovery on the basis of an enforceable oral adjustment, St. Paul is precluded from relying upon these two affirmative defenses to defeat the Hospital's cause of action. (*Western Underwriters Association v. Hankins* (1906), 221 Ill. 304, 77 N.E. 447; *Fray v. National Fire Insurance Co.* (1930), 341 Ill. 431, 173 N.E. 479. See *Lazarus v. Hagensick* (1972), 8 Ill.App.3d 126, 289 N.E. 2d 237.) The basis of this principle is that the suit is not grounded in the insurance policy but in the new promise, and therefore these policy provisions have no relevance or applicability. (*Farmers & Merchants Insurance Co. v. Chesnut* (1869), 50 Ill. 111.) To sustain the judgment of the trial court in the present case, we must be prepared to say that the evidence at trial, viewed in its aspect most favorable to the Hospital, so overwhelmingly favored St. Paul that no contrary verdict could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.2d 494, 229 N.E.2d 504.

St. Paul, however, contends that there was no evidence introduced at trial of an express or implied promise by it to pay a fixed sum.

The record reveals that Lama, St. Paul's representative and one author-ized to make adjustments on claims by insured, was present at the time the interior of the damaged boiler was inspected. To those skilled in the repair of this type of boiler, it was apparent that a new refractor, new

insulation, and new casing would be needed to repair the damage. At that time, the nature of the repairs "sounded realistic" to Lama, who took pictures of the damage. Through Lindquist, Lama requested the plaintiff to prepare a bid for work on the boiler, and after this was done, asked the plaintiff for a further breakdown on the cost of labor and materials. Plaintiff complied with this request as well. After a period of time had elapsed during which the chief engineer of the Hospital expressed his concern about having the work completed for the cooling season, Mooney telephoned Lama, who gave him authorization to do the repair work. It should also be noted that it was Lama who asked Lindquist if he had any objection to having plaintiff do the work.

In our view, it would be eminently reasonable for a jury to believe that Lama's authorization to Mooney to perform the work carried with it an implied promise to the Hospital to pay the amount of the bid submitted by Mooney on behalf of plaintiff. (*Manchester Fire Assurance Co. v. Fitzpatrick* (1905), 120 Ill.App. 535.) At no time after receipt of the bid breakdown did Lama object to the delineation of the cost figures of the labor or materials. In our opinion a jury would be entitled to believe that Lama authorized the repair work to be done as an admission of his company's liability in the matter.

St. Paul offers the theory that Lama merely acquiesced in the Hospital's desire to begin repairs and in the process simply recognized the extent of damages. The record lends no support to this proposition. Lama testified that his conversations with Mooney were confined to his attempts to obtain from Mooney an "opinion." Thus, his purported lack of knowledge as to the commencement of repairs by the boiler company would render any acquiescence on his part impossible. In view of Mooney's testimony that Lama expressly authorized the work to be done, to accept St. Paul's argument on this point would stretch *Pedrick* beyond the point of recognizable limits.

St. Paul next argues that the evidence adduced at trial was insufficient to support the theory that an adjustment of liability was made. St. Paul maintains that the evidence at most supports the inference that an adjustment of damage was agreed to by the parties in the event that liability were later to be recognized by it.

A survey of the pertinent case law in this State discloses that it is unclear whether the distinction proposed by St. Paul is recognized in this jurisdiction. In the early case of *Illinois Mutual Fire Insurance Co. v. Archdeacon* (1876), 82 Ill. 236, our supreme court held that where the insured and insurer adjust the amount of the loss, the law shall imply a promise to pay that amount. Later, in *Oberman v. United States Fire Insurance Co.* (1924), 313 Ill. 172, 175, 144 N.E. 798, the court used

language which could be construed as adopting a different philosophy. There the court stated that the mere ascertainment or adjustment of the loss by the parties "does not necessarily entitle the assured to recover that amount. The adjustment of itself merely amounts to an admission on the part of the insurer that the sum fixed is due if the insured is to have anything under the policy, and does not stop the insurer from setting up fraud, breach of conditions of the policy or other acts of the insured that operate to defeat the insurer's liability." (313 Ill. 172, 175.) However, in *Rodewald v. Randolph Mutual Insurance Co.* (1948), 333 Ill.App. 271, 77 N.E.2d 443, this court held that *Oberman* did not change the law in this regard. Restricting *Oberman* to its facts, this court in *Rodewald* noted that the parties in *Oberman* had expressly agreed that the adjustment as to the amount of loss would be due the insured in the event that the liability of the insurer were later found to exist.

We believe that the reasoning in *Rodewald* is sound, and that the holding in *Oberman* should be restricted to its facts. Consequently, this distinction in the nature of adjustments urged by St. Paul is baseless. However, even if *Oberman* did establish a distinction in the type of adjustments to be analyzed in all cases, then it is obvious that a jury question existed on the point under *Pedrick*. St. Paul asserts that the fact that Lama requested an opinion from Mooney as to the cause of the damage after Lama had given his alleged authorization to perform the repair work conclusively proves that the investigation was still pending. However, once again we state that any inference to be drawn from this evidence would be within the province of the jury. The jury could very well decide that the opinion was requested after authorization had been given merely to verify for the insurer's records Lama's previous determination that St. Paul was liable. Whatever motivation can be gleaned from the facts in this regard should be decided by the triers of fact. See *Farley v. Security Insurance Co.* (1947), 331 Ill.App. 448, 73 N.E.2d 662.

St. Paul next contends that even if it made a promise to pay a fixed sum as part of a compromise settlement, the promise was unenforceable for lack of consideration.

■■ In many cases involving adjustments, the respective parties' dispute centers upon the amount of proceeds to which the insured is entitled. In such cases, a good faith compromise figure is reached, and the consideration said to be passing from the insured to the insurer is the forbearance of his right to sue for a greater amount of the proceeds. (See *Farmers & Merchants' Insurance Co. v. Chesnut* (1869), 50 Ill. 111; *Millers' National Insurance Co. v. Kinneard* (1891), 136 Ill. 199.) The same reasoning applies when the parties in good faith and with knowl-

edge of the facts settle a disputed or doubtful claim. The acceptance by the insured of the insurer's promise to pay contains the necessary consideration. *Kline v. Yokom* (7th Cir. 1941), 117 F.2d 370; *Roane v. Union Pac. Life Ins. Co.* (1913), 67 Ore. 264, 135 P. 892. See *Adams v. Crown Coal and Tow Co.* (1902), 198 Ill. 445, 65 N.E. 97; *McDole v. Kingsley* (1896), 163 Ill. 433, 45 N.E. 281.

■■ A jury could have found that a dispute, although implied, arose between the parties at the time the damage to the boiler was discovered. Lama testified that he first became aware of the boiler problem when his superiors informed him of a "possible claim" of the Hospital under its policy. At the time the interior of the damaged boiler was first examined, Lama was present taking photographs. Although Lama never expressly admitted liability on the part of St. Paul, on the basis of the evidence produced on behalf of the Hospital the jury reasonably could have found that any question as to St. Paul's liability was eradicated upon Lama's authorization to Mooney on May 7 to perform the required work. The jury could have also found that this authorization resulted in the settlement of the dispute and not merely the end of an investigation of a claim.

St. Paul argues finally that even if an enforceable promise to adjust was accepted by the Hospital, it was entitled to a directed verdict by the total absence of any proof that the loss was an enumerated peril covered in the policy. The Hospital, conceding the absence of proof on this point, responds that all provisions of the policy are waived upon evidence of a contract of settlement and, therefore, that evidence of a covered loss is not part of its prima facie case.

■■ We reject the Hospital's broad claim that a prima facie case of a valid compromise settlement ipso facto waives all provisions of an insurance policy regardless of their nature. Yet this does not mean that St. Paul's position has merit. Even assuming that the loss sued on must be a covered loss as set out in the policy, it is possible for the insurer to waive reliance on that contractual provision in a given case. Whether or not the insurer can be said to have waived reliance upon a provision in an insurance policy is a question to be determined by a jury. (See *Fray v. National Fire Insurance Co.* (1930), 341 Ill. 431; *Farley v. Security Ins. Co.* (1947), 331 Ill.App. 448; *Western Underwriters Association v. Hankins,* (1906), 221 Ill. 304.) The triers of fact could find that St. Paul made a valid and enforceable promise to adjust, which on the facts of this case was inconsistent with strict compliance of the covered peril clause.

■■ We have carefully reviewed and analyzed the evidence adduced in this case and conclude that it was sufficient to create a prima facie

case for recovery by the Hospital on the basis of adjustment. Hence, the trial court erred in directing a verdict at the close of the Hospital's case. St. Paul bore the burden of going forward with the evidence at that point in the trial.

A final issue raised by the Hospital relates to the repeated successful objections made by St. Paul at trial to the Hospital's attempts to introduce into evidence the amount of the bid submitted by plaintiff to St. Paul as proof of its damages. The basis of the objections was the lack of a proper foundation for the evidence.

■■■ The Hospital points out that St. Paul and the trial court erroneously believed that the actual cost of the repair and not the agreed-upon contractual price is the proper measure of damages in a case such as this. St. Paul has totally neglected to address itself to the issue of damages in this court, which in and of itself is grounds for reversal. (Ill. Rev. Stat. 1973, ch. 110A, pars. 341(e)(7) and (f); *Marcus v. Green* (1973), 13 Ill.App.3d 699, 300 N.E.2d 512.) In any event we accept the Hospital's reasoning as to St. Paul's objections, and we find that the trial court erred in excluding evidence of the alleged agreed-upon price. (*Booher v. Williams* (1950), 341 Ill.App. 504, 95 N.E.2d 518.) The Hospital is entitled to the amount of the bid or it is entitled to nothing at all.

For the reasons stated above, the judgment of the circuit court of Cook County is reversed, and this cause is remanded for a new trial not inconsistent with the views expressed in this opinion.

Judgment reversed and cause remanded.

McGLOON, P. J., and DEMPSEY, J., concur.