The TOMAR COMPANY, Inc., and Triangle Industries Corp., Plaintiffs-Appellees,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENN., Defendant-Appellant.
No. 14800.

United States Court of Appeals
Seventh Circuit.
May 19, 1965.

Rehearing Denied July 6, 1965.

Thomas P. Sullivan, Charles J. O'-Laughlin, Muller Davis, Chicago, Ill., for defendant-appellant National Union Fire Ins. Co. of Pittsburgh, Pa., Raymond, Mayer, Jenner & Block, Chicago, Ill., of counsel, for defendant-appellant.

William H. Symmes, David Jacker, John M. O'Connor, Jr., of Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for plaintiffs-appellees.

Before HASTINGS, Chief Judge, and DUFFY and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

This is a diversity action against defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania, for damages arising out of a fire loss suffered by plaintiffs the Tomar Company, Inc. and Triangle Industries Corp. These two corporations were joint venturers in the business of assembling and packaging aluminum Christmas trees. The fire occurred on November 15, 1959, and destroyed plaintiffs' chief location on Belmont Avenue in Chicago.

Plaintiffs had carried sixteen insurance policies to cover losses which might be sustained by reason of interruption of their business. After the fire, plaintiffs made claims under these policies with National Union and the fifteen other companies. Prior to the start of this action, all of the companies with the exception of defendant paid their allocable shares of plaintiffs' loss. Defendant, however, refused to pay its allocable amount, claiming that it was not represented in the adjustment of the loss and that there were gross errors in the computation of the damages, which errors were caused by plaintiffs' misrepresentations to the adjusters.

Subsequent to investigation and negotiation, adjusters for the insurance companies and plaintiffs compromised the loss at $101,702.56 and prepared a "Sworn Statement in Proof of Loss" through the Cook County Loss Adjustment Bureau.

The adjustment of the loss was handled in the following fashion. Plaintiffs appointed Harry Fienk as their adjuster. Two appraisers represented the insurance carriers, Edward R. Brunke of Frank L. Erion & Co., representing twelve of the insurors, and G. R. Hanselmann of General Adjustment Bureau, representing the other four. These appraisers filed interim reports with the Cook County Loss Adjustment Bureau and finally agreed upon the settlement figure. The Bureau, a clearing house for insurance companies, transmitted the reports and final proof of loss to the companies. Defendant's share was determined to be $17,534.92. It refused to pay this amount, claiming that Brunke had neither real nor apparent authority to represent it in the computation and allocation of plaintiffs' loss. The district court, however, found that Brunke had acted as defendant's adjuster and had bound it to the terms of the settlement agreement.

■ The district judge in a memorandum opinion stated: "Having had several months notice of the fact and substance of the negotiations being carried on in its name by the adjuster, * * * the insurers * * * may [not] be heard, absent fraud or gross error, to repudiate the apparent authority of adjusters holding themselves out as agents for them." The judge went on to say: "This is especially so in insurance adjustments where an adjuster is recognized to have the authority not only to negotiate an agreement, but also to bind the insured to the dollar figure established by that agreement. Farley v. Security Ins. Co. of New Haven, 331 Ill.App. 448, 73 N.E. 2d 662 (1947)." We are in full agreement with these statements and hold that the evidence supports the district court's finding of agency.

Prior to November 15, 1959, Associated Agencies, an insurance agency and brokerage firm in Chicago, sold to plaintiffs fire insurance, including business loss endorsement. The business interruption insurance was divided among the sixteen companies of which defendant was one. The insurance with the latter was placed through National Union's lo-

cal agent, Don Jensen. Associated Agencies was notified of the fire. A representative of Associated Agencies testified that his office, in turn, notified Jensen of the fire and obtained Jensen's permission to report the loss to the Cook County Loss Adjustment Bureau. Frank L. Erion & Company (Brunke's firm) was then asked by Associated Agencies to act as one of the adjusters for the insurance companies.

The proof of Brunke's actual authority to act as defendant's representative in adjusting the loss is so tenuous as not to permit a finding to that effect. Other evidence, however, coupled with that which we have just mentioned, shows to our satisfaction that Brunke had apparent authority from defendant to act as its adjuster. While the adjusters' discussions were in progress, five reports were forwarded to the respective carriers through the Cook County Loss Adjustment Bureau. It is undisputed that National Union received these reports and through Drew Briner, its vice president, participated in later discussions with the adjusters in an effort to reduce defendant's proportionate share in the loss. At no time was there any indication that defendant questioned the authority of Brunke (Erion & Co.) to represent it. Moreover, Briner on two occasions in letters addressed to the Bureau referred to Erion & Co. as "our adjusters." This in our opinion indicates clearly that Brunke had apparent authority to adjust the loss on behalf of defendant. The combination of negative evidence (defendant's failure to disavow the authority of Brunke to act for it) and of affirmative evidence (defendant's characterization of Erion & Co. as "our adjusters") meets the legal minimum of proof to sustain the district court's finding in this regard.

National Union also contends that there was gross error or fraud in the computation of the loss sustained by plaintiffs. The adjusters based their calculations on the anticipated number of employee hours that would have been worked between the date of the fire, November 15, and the last day to deliver the Christmas trees produced by plaintiff, December 24. By employing this estimated number of working hours with other figures based on prior experience, the adjusters were able to project estimated gross sales lost by plaintiffs.

Defendant's major objection to the estimation of the loss is that there is a discrepancy in the evidence relating to the number of hours which plaintiffs' employees could have worked during the time period used for calculating the damages to plaintiffs' business. Specifically, defendant argues that although Tomar's president, Beckerman, testified that there would have been three shifts operating at the Belmont Avenue plant, it was shown that the nature of the work performed by plaintiffs made a three-shift day impossible. Moreover, defendant contends that there would not have been as much work performed by plaintiffs at their Southport Avenue plant in Chicago if the Belmont plant had remained in operation. Accordingly, defendant urges that the increase in Southport's production should have been set-off against the estimated loss in Belmont's production.

Essentially, the question of amount of loss is one of fact. The district judge specifically found that the estimated production lost by plaintiffs was not based on the number of shifts which would have been worked but rather on the "number of man working hours" and the estimated trees that "would have been manufactured and sold if the fire had not occurred." The adjusters whose settlement defendant contests were not agents of plaintiffs. Their original estimate of the work hours lost by plaintiffs was less than the figure submitted by plaintiffs. The final determination of the amount of hours lost was a compromise figure, arrived at by negotiation and discussion between an adjuster representing plaintiffs and the two adjusters representing the insurance companies. As the district judge noted, it is not the task of the courts to review *de novo* all elements included in the final compromise adjust-

ment figure. After reviewing the evidence presented, the district judge discounted defendant's claims of gross error or fraud, and found it to be "material and clear" that the factors considered by the adjusters in computing the loss were "not colored by material misrepresentations, concealment or fraud." The evidence fully supports these conclusions.

The judgment of the district court is affirmed.