MICHIGAN FIRE REPAIR CONTRACTORS' ASSOCIATION v.
PACIFIC NATIONAL FIRE INSURANCE COMPANY.

1. ASSIGNMENTS—RIGHTS OF ASSIGNEE.
    The right of an assignee under an assignment against a claimed
    obligor depends entirely upon the terms of the assignment
    and cannot convey to the assignee any right which the assignor
    did not possess.

2. INSURANCE—REPAIR BY INSURER UNDER FIRE INSURANCE POLICY.
    Statutory provision of fire insurance policy empowering insurer,
    at its option to make repairs to fire-damaged premises, if it

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur, Assignments § 115.
[2, 3, 5] 29A Am Jur, Insurance §§ 1699–1701.
[4] 29A Am Jur, Insurance § 1610 et seq.
[6] 3 Am Jur, Appeal and Error § 823.
[7] 3 Am Jur, Appeal and Error § 812.

decided to do so and notified insured in writing within 30 days, precludes any other recovery under the fire insurance policy (CLS 1956, § 500.2832).

3. SAME—INSURER'S OPTION TO REPAIR FIRE LOSS—APPRAISAL—AS-
SIGNMENT.
   The insured under a fire insurance policy is obligated to submit to an insurer's option to repair the loss itself in case it sees fit to make the repairs rather than appraise the loss, a situation in which the insured has nothing to assign (CLS 1956, § 500.2832).

4. SAME—FIRE LOSS—ARBITRATION.
   Record in suit by assignee of insured who had sustained a fire loss to enforce insurer's alleged obligation to arbitrate appraisal for fire loss and to enjoin insurer from making repairs *held*, to fail to show any dispute between the insurer and insured to be submitted to arbitration.

5. SAME—FIRE LOSS—PARTIES—REPAIR CONTRACTORS.
   Association of fire repair contractors *held*, not a proper party to suit by assignee of insured who had sustained a fire loss against insurer which had elected to repair the premises itself under statutory option provision of policy (CLS 1956, § 500.2832).

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—FIRE INSURANCE—
INJUNCTION.
   Question of fact raised by plaintiff assignee of insured who had sustained a fire loss as to whether the insured had acknowledged receipt of insurer's offer to make the repairs and requested defendant to proceed within a reasonable time is not resolved, it being considered unnecessary to determination of whether injunction issued against defendant from proceeding with repairs it had commenced before assignee's suit was started and wherein it has been held the assignor had had nothing, as yet, to assign (CLS 1956, § 500.2832).

7. SAME—CLAIM OF APPEAL—SUBSEQUENT PROCEEDING IN CIRCUIT
COURT—QUESTIONS REVIEWABLE.
   Question raised by defendant insurer, appellant in injunction proceeding against it by assignee of insured under fire insurance policy, which related to proceedings before circuit court following claim of appeal and not a proper part of the record on appeal is not disposed of on the appeal.

Appeal from Wayne; Culehan (Miles N.), J. Submitted January 4, 1961. (Docket No. 18, Calendar No. 48,503.) Decided March 1, 1961.

Bill by Michigan Fire Repair Contractors' Association, a Michigan nonprofit corporation, and Harold Warren, doing business as the Federal Contracting Company, assignee of Willard Williams and Mary Williams, against Pacific National Fire Insurance Company, a foreign corporation, to enjoin repairs on policyholders' property damaged by fire and to enforce submission of dispute to appraisal. Order granting plaintiffs relief. Defendant appeals. Reversed and remanded for dismissal of bill.

*Philip Weiss* and *Jesse R. Bacalis,* for plaintiffs.

*Adams & Wade* (*Ralph H. Adams,* of counsel), for defendant.

Edwards, J. This is a bill of complaint for injunctive relief brought by a fire repair contractor and a contractors' association against defendant fire insurance company. The contractor sues as assignee of 1 of defendant's policyholders to enjoin defendant from refusing to participate in appraisal of the fire damage to the policyholder's house, and from making repairs to the policyholder's premises in the meantime.

The circuit judge, on filing of the bill of complaint, entered a temporary restraining order granting the relief requested, and an order to show cause as to why a permanent injunction should not issue. Defendant filed an answer asserting that it was exercising its option under the insurance contract to make the repairs itself, and asked dismissal of the bill. At hearing on the show cause order, the circuit judge interpreted the insurance contract and assignment as requiring defendant, on demand, to participate in an arbitration proceeding to appraise the fire damage, ordered defendant to do so, and en-

joined defendant from making the repairs in the meantime.

The fire in question occurred on September 9, 1959, at the home of Willard and Mary Williams in Flint, Michigan. They were insured with defendant under a standard form of insurance policy which contained 2 clauses upon which this dispute hinges:

"APPRAISAL. In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the State in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any 2 when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

"COMPANY'S OPTIONS. It shall be optional with this company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within 30 days after the receipt of the proof of loss herein required."

The day after the fire, on September 10, 1959, the Williamses executed what is termed a "Fire Repair Agreement" with plaintiff Federal Contracting Com-

pany.* The language of the agreement declared that the undersigned "hereby irrevocably engages" the contracting company to make all necessary repairs, and "irrevocably" assigned to the company all rights "of every nature whatsoever" that the undersigned had in "each and all policies" covering "said

---

* "Member of the Michigan Fire Repair Contractors' Association
"FLINT—PONTIAC—DETROIT
"The Federal Contracting Co.
"2804 N. Franklin avenue, Flint 6, Michigan
"CEdar 8–5676
"Fire Repair Agreement
"Flint, Michigan Sept 10, 1959
"To the insurance companies, their agents, or to whom it may concern:

"Willard and Mary Williams, the undersigned, hereby irrevocably engages the Federal Contracting Company, contractor, to make all necessary repairs caused by a fire occurring on the 9th day of Sept, 1959, at 5 p.m. to property owned by the undersigned located at 220 E. 7th street, City Flint, State Mich.

"The undersigned, to insure payment to the Federal Contracting Company, does hereby irrevocably assign to the Federal Contracting Company, or its assigns, as payment for the repair of damage to said property, all of the undersigned's rights of every nature whatsoever in each and all policies of fire insurance and the benefits therefrom which the undersigned has covering said fire loss, said company being hereby appointed the undersigned's attorney, to sign his name with or without designation of authority to all instruments relating to such policy, including proofs of and payments for loss.

"It is understood that the property damaged by fire is to be restored to as good a condition or better than existed before the fire, for the amount of the adjusted claim. The owner, the undersigned, is not to be liable for anything in excess of the insurance check. The owner is to approve specifications before work is started. Endorsement of the fire draft to the Federal Contracting Company will be payment in full for all services rendered.

"(In the event the insurance company determines the fire damage to be in excess of the total amount of insurance carried and the Federal Contracting Company is unable to repair the fire damage for the amount of insurance carried, or that it is determined that there is no insurance, this agreement and assignment is automatically cancelled and terminated without any cost to owner except for temporary repairs.)

"The Federal Contracting Company does not represent any insurance company. This agreement includes both temporary and permanent repairs.

"Federal Contracting Company
"By D. Heald                    x Willard Williams
                                                        Owner
                          x Mary Williams                 •
                                                        Owner
"All fire losses adjusted by licensed public adjuster—Without cost to property owner."

fire loss." The last sentence of the "irrevocable" agreement, however, allowed the contracting company to make an entirely unilateral decision as to whether or not the insurance coverage was adequate to cover the cost of repairs and allowed it, on a negative finding, to declare the agreement "cancelled and terminated."

On September 11, 1959, plaintiff contracting company sent defendant a notice of the fact that it had hired the National Fire Loss Adjusters, Inc., to prepare an estimate of loss on the Williams house.

On September 14, 1959, the National Fire Loss Adjusters mailed defendant an itemized estimate and asked defendant to negotiate settlement of the fire loss.

On September 30, 1959, plaintiff contracting company prepared and executed and, on October 1st, sent a proof of loss on the subject premises in the amount of $1,412, together with a request for appraisal.

Defendant insurance company answered none of these communications, but on October 19, 1959, defendant sent Willard and Mary Williams, defendant's insureds, a written notice of its intention to exercise the option in its insurance agreement "to repair, rebuild and replace" the fire-damaged property. Defendant further asserts (and plaintiffs deny) that the Williamses signed an acknowledgment of this notice and a request for defendant to commence repairs "within a reasonable time." This acknowledgment is the only disputed fact in this record (and one which, as will later appear, we consider irrelevant to disposition of the case).

Following dispatch of the option notice referred to above, defendant insurance company employed a contractor and commenced repairs. It had almost completed same on October 30, 1959, when it was served with plaintiffs' bill of complaint and a preliminary restraining order.

At the show cause hearing, the documents we have referred to were apparently received as exhibits and oral argument was had as to the legal effect of the contract provisions in dispute. The circuit judge decided the matter by entering an order which provided:

"It is ordered that the defendant, Pacific National Fire Insurance Company, a foreign corporation, be and is hereby restrained from violating its insurance contractual provision requiring the submission of a policy dispute as to the actual cash value for a fire loss of the plaintiff, to appraisal forthwith and without any delay whatsoever, and

"It is further ordered that the plaintiff's demand for the appointment of an umpire appraiser be continued for 1 week, until Monday, November 16, 1959 at 2 o'clock before this court for the appointment of an umpire appraiser when and if the appraiser designated by the parties herein are unable to agree upon the selection of an umpire of their own choosing, and

"It is further ordered that in the meantime and until the further order of this court, that the defendant, Pacific National Fire Insurance Company, a foreign corporation, be and are hereby restrained from either attempting to undertake or performing any contract with any person for the erection, construction, replacement, repair or alteration or improvement to 220 E. 7th st., Flint, Michigan."

Plaintiff contracting company's rights in this matter depend, of course, entirely upon the assignment of September 10, 1959. Assuming, without deciding, that it is binding on the Williamses and has not been revoked by them, the assignment clearly cannot convey to plaintiff contracting company any right which the Williamses did not possess. *Edson* v. *Gates*, 44 Mich 253; *National Bond & Investment Co.* v. *Union Investment Co.*, 260 Mich 307. The insurance contract contained an option provision which allowed the

defendant to make repairs itself if it decided to do so and served notice in writing of its intent within 30 days of receipt of proof of loss. This option provision is an exact copy of a provision of the State law which is required to be present in all fire insurance contracts in this State. CLS 1956, § 500.2832 (Stat Ann 1957 Rev § 24.12832). When properly exercised, such option clause precludes any other recovery.

This record indicates that defendant acted within the time specified in the insurance agreement and was proceeding to make the repair it was obligated to make until stopped by court order. In *Cascaden* v. *Magryta,* 247 Mich 267, this Court said (pp 270, 271):

"Under the Michigan standard form of fire insurance policy, an insurance company has the option to repair the property damaged. CLS 1922, § 9100 (243).* The adjuster exercised the option, and, to satisfy the loss, assumed for the insurance company the obligation to repair the damage, and sent plaintiffs to do the work. The defendants could not, while the insurance company was exercising the option right to repair, do otherwise than submit."

See, also, *Westchester Fire Insurance Co.* v. *Dodge,* 44 Mich 420.

Under the circumstances in this case, the assignment relied upon by plaintiff contracting company is a nullity since there is no showing that the Williamses had any fire loss claim to assign. Defendant was proceeding in exact accordance with its written undertaking with the parties whom they insured, and should not have been restrained from completing the repairs.

As to the appraisal provision of the contract, the first sentence reads:

---

* Repealed, with provisions substantially the same incorporated in the insurance code of 1956 (PA 1956, No 218) in section cited, *supra.* —REPORTER.

"In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand."

We believe the appraisal provision of the contract is not subject to being invoked unless there is a dispute either about the sum of reimbursement due the insureds if they are making repairs, or the nature, extent or quality of the repairs if the insurance company sees fit under its option to make them itself.

There is nothing in this record to indicate any dispute between the insurance company and its insureds to be submitted to arbitration.

We have made no reference to 1 of the listed plaintiffs, the Michigan Fire Repair Contractors' Association, as we are unable to ascertain any circumstance which would make it a proper party to this proceeding.

We make no disposition of appellant's second question since it pertains to proceedings before the circuit court which followed the claim of appeal and which are not a proper part of this record.

The order of the circuit court is set aside and the matter is remanded for dismissal of the bill of complaint.

Reversed. Costs to appellant.

Dethmers, C. J., and Carr, Kelly, Smith, Black, Kavanagh, and Souris, JJ., concurred.