Major Howard, Lucille Howard, and The Exchange National Bank of Chicago, as Trustee Under Trust No. 6262, Plaintiffs-Appellees, v. Reserve Insurance Company and Market Insurance Company, Defendants-Appellants, and Midland National Insurance Company, Defendant.

Gen. No. 53,389.

First District, First Division.

December 8, 1969.

Heineke, Conklin & Schrader, of Chicago (Paul H. Heineke, of counsel), for appellants.

George C. Rabens, of Chicago, for appellees.

MR. PRESIDING JUSTICE ADESKO delivered the opinion of the court.

This is an appeal from a decree against the Reserve Insurance Company, Market Insurance Company and Midland National Insurance Company, on a claim for a fire loss in a building at 1523 S. Pulaski Road, Chicago, Illinois, owned by the plaintiffs. It was insured by three separate insurance policies issued by the defendants. The judgments were pro rata of the amounts of the applicable insurance in each defendants' policy. The Midland National Insurance Company satisfied the judgment against it and is not a party to this appeal.

Each policy contained identical provisions which are involved in this appeal. They are designated in Exhibit A

of the record under the subhead "Requirements in case loss occurs," in lines 90 to 122 and provide:

"The insured shall give immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged. The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examina-

tion all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made."

The policies provide further under the subhead "Company's options" in lines 141 to 147 as follows:

"It shall be optional with this Company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within thirty days after the receipt of the proof of loss herein required."

The appellant insurance companies maintain that the sole issue before this court is whether the plaintiffs breached the policy contracts by depriving the insurance companies of the opportunity to exercise the option reserved to them in the policies to repair or rebuild. The plaintiffs-appellees claim that this is an oversimplification of the issues here involved. Let us examine the agreed statement of facts submitted by the parties and their ideas of the issues.

The first occurred late on June 14, 1963, or early the following day. The insurance companies were notified on June 17, 1963. On June 25, 1963, John Hagensick, fire loss manager for the Reserve and Market Insurance Companies wrote the Exchange National Bank, which was the named insured, as follows:

"You have notified us of a fire at the captioned address which occurred June 14, 1963, under Market

Insurance Company Policy No. 5425–1167 and Reserve Insurance Company Policy No. 1025–1509.

"Your attention is invited to the fact that we will insist upon compliance with the policy provisions which are set forth in lines 90 to 122 inclusive.

"We also wish to point out lines 141 to 147 of the insurance policy which state, 'It shall be optional with this Company to take all, or any part of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within thirty days after the receipt of the proof of loss herein required.'

"The submission of this letter to you and the copies to the respective interested parties is not intended to be nor is it a waiver of any of the rights of the Reserve Insurance Company under their Policy No. 1025–1509 and the Market Insurance Company under their Policy No. 5425–1167.

"If we can assist you in the adjustment of this claim, please contact the writer at WE 9–7031."

On June 28, 1963, John Hagensick as adjuster for Reserve and Market Insurance Companies and Mr. Hillman, as adjuster for the Midland National Insurance Company, having received certain information as to the amount of the loss, checked the damage caused by the fire, the claim presented by the public adjuster, and reached the opinion that the damage by fire was $6,493.

Joseph Risberg, a public adjuster representing the insured, testified that he examined the fire loss and prepared a claim. He met Wilbur Hillman, representing Midland National Insurance Company and John Hagensick, representing the appellants who checked the estimated claim. Hillman then said: "We're going to get

394

together and get up a set of figures for you." Subsequently Risberg met Hillman who showed the figures he and Hagensick decided on. Risberg and Hillman met a few times again but did not agree and Hillman then told Risberg, "Go ahead and sue."

In the meantime, on July 8, 1963, Louis Seiden, President of Central Fire Adjusting Bureau, also representing the insured, sent Reserve Insurance Company a bill for temporary electrical work, re: fire loss at 1523 S. Pulaski Road. On July 19, 1963, Louis Seiden wrote Hagensick as follows:

"Mr. John Hagensick, Adjuster for
Reserve Insurance Co.

"Dear Mr. Hagensick:
"As per your request for certification of employment between our firm and the beneficiary of Exchange National Bank, Trust #6262,
"We enclose a copy of signed agreement. Upon receipt of this we would appreciate an appointment to meet and agree upon a fair and equitable settlement for the damages sustained by fire at 1523 So. Pulaski Road.
"Thanking you for your kind cooperation, we are

"Central Fire Adjusting Bureau
"By Louis Seiden, Adjuster."

On July 24, 1963, Reserve Insurance Company wrote Central Fire Adjusting Bureau as follows:

"We have your letter of July 19. The thermofax copy of the so-called agreement, which you enclosed with that letter is illegible. In addition, we are not willing to accept your statement that the person who signed it is the beneficiary of the Exchange National Bank as Trustee under Trust No. 6262.

"Without waiving but, in fact, insisting upon all of the rights of the Reserve Insurance Company

395

under its policy No. 1025–1509 and the Market Insurance Company under its policy No. 5425–1167, we are unable to do anything further in this matter absent conclusive evidence of your right to speak for the assured.

"At this time we also would like to direct your attention to our letter of June 25, 1963, addressed to the Exchange National Bank, copies of which went to the Northern Illinois Title Company, Major Howard and Lucille Howard and The White Eagle Savings and Loan Association.

"Very truly yours,

"Reserve Insurance Company
"John C. Hagensick
"Fire Loss Manager."

On July 18, 1963, Hagensick learned that the fire damage was being repaired by the insured. On August 13, 1963, proofs of loss were sent to Hagensick by Central Fire Adjusting Bureau showing loss and damage totalling $11,097.50. It was subsequently agreed by the parties that the loss and damage had been repaired for $6,500 of which $3,350 of repairs were made prior to the filing of the proofs of loss.

On October 1, 1963, Hagensick wrote the insureds as follows:

"Under date of August 13th a document apparently intended to be a proof of loss, signed by you, was received by the Reserve Insurance Company. This document is returned to you herewith.

"On June 25th we wrote you and we direct your attention to that letter. On July 24th we wrote Central Fire Adjusting Bureau.

"It is our opinion that the policy contract between you and the Reserve Insurance Company had been breached and the Reserve Insurance Company de-

prived of valuable rights under the policy. Therefore, it denies all liability for any loss and damage claimed to have been sustained by reason of a fire of June 15,1963."

It appears that efforts were made by the parties to reach some agreement as to the fire loss. There is evidence that immediately after the fire some action had to be taken by the insured in order to protect the property from further damage. In this respect, the insured complied with the provisions of the policies. Thereafter negotiations were commenced while some of the repairs to the building were being made. The insurance companies were aware that these repairs were in progress and did not advise the insured that they should cease because the companies may exercise their option to repair or rebuild. We are mindful that the policies provided that the insurance companies had thirty days after receipt of proof of loss to exercise their option. Knowing however that the insured commenced some of the repairs which were necessary to avoid further loss and damage, the insurance companies did not say "stop further work." We agree with the trial court's statement:

"This letter (June 25, 1963) that was sent did not exercise the option, and following that letter, negotiations were going on with the adjusters for the companies with regard to amounts, and if the company had taken the position that they would exercise that option, even if that letter didn't so indicate it, it was the duty of these adjusters to say, 'why do we talk about money? We don't care what you're asking or what the price is. We're going to do that ourselves.' "

■■ It is difficult to draw a clear-cut line between the limits to which the insured can go in its duty to "protect the property from further damage, forthwith separate the damaged and undamaged personal property,

397

put it in the best possible order. . . ." It is equally difficult at times to determine whether it is more reasonable to complete temporary repairs or to do only so much, and stop at some point in anticipation of the insurance company's right to exercise its option to rebuild or repair. All of the concerned parties should approach this situation fairly and honestly. If the insurance company demands its rights under the policy it should let this be known to the insured promptly and in a "plain, simple and straightforward manner." On the other hand, the insured should not present an exaggerated and unreasonable proof of loss.

Counsel for the companies, in his oral argument before this court, stated that there is no law in Illinois on the provision found in fire insurance policies on the question of the insurance company's option to repair, rebuild or replace. It is our opinion that Illinois law recognizes all valid provisions of standard fire insurance policies including the insurance company's option to repair, rebuild or replace the property destroyed or damaged. We adopt the language of the Court of Appeals of Kentucky in German Ins. Co. v. Hazard Bank, 126 Ky 730, 104 SW 725 (1907) :

> "In insurance contracts, as in all other contracts, it is incumbent upon the parties to deal with each other in a plain, simple, and straightforward manner, and, where an election is to be exercised under a contract, notice should be made in such manner as to leave no doubt in the mind of the opposite party of an intention to exercise it."

In the instant case, the letter of June 25, 1963, in our opinion is not a clear indication of the insurance company's exercise of their option rights to repair, rebuild or replace. Said letter "insists" on compliance with the policy provisions in lines 90 to 122 relating to the duty of the insured to protect the property from further

damage, but it "points out" lines 141 to 147, which give the insurer the options to repair, rebuild or replace. We agree with the insured that said letter did not contain a clear unambiguous and explicit exercise of the option.

Appellants ask this court to establish by its decision some guidelines to prevent future litigation. It is axiomatic that each legal controversy must be resolved within the framework of the facts and circumstances and the law therein involved. Basic guidelines may be helpful but they alone do not resolve legal controversies and possible future litigation. The above reference to the Kentucky Court of Appeals decision may be helpful.

■ In Home Mut. Ins. Co. v. Stewart, 105 Colo 516, 100 P2d 159 (1940), the Supreme Court of Colorado suggests five criteria to make the notice of election by insurance companies effective.

"(1) It must be made within a reasonable time after the damage or loss has occurred to the insured.
"(2) It must be clear, positive, distinct and unambiguous.
"(3) The repairs or replacements must be made within a reasonable time.
"(4) It cannot be coupled with an offer of compromise or be made for the purpose of forcing a compromise, but it must be an election made with no alternative.
"(5) When the election is made, the repair or replacement must be suitable and adequate."

We adopt these criteria, however, with this caution that most legal controversies present differences which must be decided individually within the legal and factual bounds therein contained.

Appellants direct our attention to the language contained in certain cases in support of their appeal. In Aetna Ins. Co. v. Platt, 40 Ill App 191 (1891), the insurance company notified the plaintiff of its intention to

rebuild and repair and within eight days began such work. The question of the amount of damages was submitted to arbitrators. The Illinois Appellate Court reversed the judgment of the trial court holding that submission to arbitration to ascertain damage was not an election to pay the loss and a waiver of the right to rebuild or repair.

In Michigan Fire Repair Contractors Ass'n v. Pacific Nat. Fire Ins. Co., 362 Mich 552, 107 NW2d 811 (1961), the Michigan Supreme Court reversed the trial court holding that the insurance company properly exercised its option to repair.

In Beals v. Home Ins. Co., 36 Barb 614, affd 36 NY 522 (1867), the insurance company exercised its option to rebuild and notified the insured of its intention to do so. The insured refused to allow it. The action against the insurance company was nonsuited, which the New York Court of Appeals affirmed.

In Marblestone Co. v. Phoenix Assur. Co., Ltd., of London, 169 Minn 1, 210 NW 385 (1925), the insured commenced a sale of the damaged property in four days after the fire, disposing of 74 percent of the property before the insurance company was able to have the loss appraised. The Minnesota Supreme Court affirmed the trial court's judgment for the insurance company.

None of these cases present the problem involved in the instant case. In none of them were negotiations in progress between the insured and the insurance companies prior to the insurance company's exercise of its option to rebuild or repair.

The Gipps case (Gipps Brewing Corp. v. Central Manufacturers' Mut. Ins. Co., 147 F2d 6 (1945)), referred to by appellant has no application. Gipps involves fraud on the part of the insured. There is no question of fraud in the instant case. In Gipps the court quotes from Osh-

kosh Match Works v. Manchester Fire Assur. Co., 92 Wis 510, 66 NW 525 (1896), in which the insured, after the loss, sold the property without the consent of the insurance company and before its adjuster had seen it. The Wisconsin Supreme Court reversed the trial court holding that the examination of an agent of the insurance company as to the loss, after proofs of loss have been submitted, is not a waiver of a breach of the policy by the insured, where it is expressly provided that such an examination shall not be a waiver. We do not disagree with this decision, but it has no application to the case under consideration herein.

Both parties to this appeal direct our attention to Elliot Five Cent Sav. Bank v. Commercial Union Assur. Co., 142 Mass 142, 7 NE 550 (1886) and to Davis v. Grand Rapids Fire Ins. Co., 15 Misc 263, 36 NYS 792 (1895). In the Elliot case immediate repairs were necessary to prevent further damage. The insurance company claimed, that the insured by entering and repairing the premises immediately after the fire, deprived the defendant of its right to elect, rebuild or repair. The Massachusetts Court said in affirming the judgment of the trial court for the insured:

> "The fact that the plaintiff had commenced making repairs without notice, did not deprive the defendant of its right to notify the plaintiff of its intention to repair the premises. If the defendant had done so, and found that the insured was making repairs without any notice to it, both acting in good faith, it might be difficult to adjust fairly the rights of the parties. But there is nothing to show that the defendant ever entertained the intention to repair. It has never notified the insured of such intention, and it is clear that the acts of the plaintiff in making the necessary repairs, in good faith, ought

not, upon any principles of law or justice, to defeat the right to recover its actual loss."

In Davis there is no claim that the insurance company ever exercised the option, nor was there any evidence that any notice was given by the company. The New York Court of Appeals affirmed the trial court's finding for the insured. The insurance policy gave the company the option to take any part of the articles insured at an appraised value within a reasonable time, on giving notice within 30 days after proof of loss of its intention to do so. The fire occurred on November 10, notice of the fire was served and received shortly thereafter. The goods were sold on November 29, and notice of sale was published three days before the sale, after notice to the defendant. The fact that plaintiff sold before the expiration of time did not at all affect the right of the defendant to demand compliance with the conditions. But before it could place plaintiff in default it must have itself taken steps to show that it wished to avail itself of the option. Not having done so, plaintiff was not in fault for selling.

For the reasons given above, the order of the trial court is affirmed.

Affirmed.

MURPHY and BURMAN, JJ., concur.