VICTOR LAZARUS, d/b/a V. LAZARUS COMPANY, Plaintiff-Appellant, v. JOHN HAGENSICK et al., Defendants-Appellees.

(No. 55235;

First District—October 26, 1972.

George C. Rabens, of Rabens, Formusa & Glassman, of Chicago, for appellant.

Paul H. Heineke and Andrew H. Marsch, both of Heineke, Schrader, Marsch & Cuncannan, of Chicago, for appellees.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

Plaintiff company filed suit against defendants charging tortious interference with certain contracts. A jury was selected, and trial commenced. Upon completion of plaintiff's opening statement, the trial court invited defendants to move for what it referred to as a directed verdict. They did so, and the trial court granted the motion and dismissed plaintiff's complaint on the grounds that no cause of action had been stated by plaintiff's complaint or opening statement. Plaintiff appeals this dismissal.

We reverse and remand.

The facts as alleged in plaintiff's complaint and opening statement are as follows: The plaintiff is a public fire adjusting company. On February 26, 1964, a building owned by a Mr. and Mrs. Herbert and located in Chicago was damaged by fire. The building was insured against fire loss under insurance policies carried with the defendant companies. The policy carried with defendant, Market Insurance Company, insured the building only in the amount of $10,000. The policy carried with defendant, Illinois Mutual Company, insured the building for $5000 and the household furniture in the amount of $3000. Shortly after the fire, the Herberts agreed to have the plaintiff act for them in adjusting the amount of loss with the defendant companies. The agreement with the Herberts provided that the plaintiff would receive ten per cent of all proceeds recovered from the insurance companies. As security for the plaintiff's fee, the Herberts assigned their rights to all proceeds due under the policies to the plaintiff. Plaintiff gave defendants immediate notice of this assignment as well as notice of its employment by the Herberts.

Sometime around March 17, 1964, plaintiff, through its agent, met with defendant Hagensick, the adjuster for defendant, Market Insurance Company. Hagensick represented to plaintiff that he was acting for both defendant insurance companies. Hagensick offered to settle the Herberts' loss for $4900, and plaintiff agreed to submit this figure to the Herberts. Plaintiff did advise the Herberts, and they accepted the offer. Plaintiff notified Hagensick of the Herberts' acceptance and requested him to

forward proofs of loss which he would have the Herberts execute and return.

Subsequently, without notifying plaintiff, the defendant, Market Insurance Company, with agreement of the Herberts, proceeded to repair the insured premises. The defendant was purportedly acting under the terms of an option clause contained in both policies which gave the insurer the right to elect whther it would pay for or repair any given fire loss. The defendant, Illinois Mutual Company, informed plaintiff that it would not go along with Market but would pay its share of the loss. On June 16, 1964, plaintiff submitted executed proof of loss to Illinois Mutual. Illinois Mutual's share was to be based on a readjusted loss figure of $4400. However, Illinois Mutual never paid, because as the complaint alleges, they were induced by Market to go along with the latter company in repairing the insured premises. Further, defendant Market gave defendant Illinois Mutual a written "hold harmless" agreement allegedly to protect Illinois Mutual against claims by the plaintiff.

At trial the plaintiff's opening statement was to the effect that it expected to prove specified allegations which were substantially the same as those set out in the complaint. Plaintiff was precluded from alleging that Hagensick gave assurances to the Herberts that in allowing repair instead of cash payment they would be protected against any claim or suit by plaintiff.

On appeal plaintiff argues that in fact its complaint did state a cause of action for tortious interference with contract. The defendants argue that no such cause of action is stated. They urge that in going ahead and repairing the property, they were exercising their absolute legal right as given them by the option clause contained in the contract of insurance with the Herberts. In so doing, the defendants claim that plaintiff's contingent right to a fee, given it by the assignment, became a nullity, and the fact it was denied the right to a fee is a matter for which plaintiff has no legal redress.

■■ We believe it was error for the trial court to have granted defendants' motion for a directed verdict at the close of plaintiff's opening statement. It has been firmly established in Illinois that only where there are special circumstances, which are not present in the instant case, may the trial court direct a verdict based solely upon the opening statements of the attorneys. *Pietsch v. Pietsch* (1910), 245 Ill. 454, 92 N.E. 325; *Sun Oil Co. v. Garren* (1931), 261 Ill.App. 513; *Petersen v. General Rug & Carpet Cleaners, Inc.* (1947), 333 Ill.App. 47, 77 N.E.2d 58.

Albeit our conclusion is decisive as to the outcome of this appeal, we will briefly discuss the other issues raised.

The option clause relied on by defendants and contained in the con-

tracts of insurance between the defendant companies and the Herberts is set out in the defendants' answer as follows:

"It shall be optional with this company to take all, or any part of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, or giving notice of its intention so to do within thirty days after receipt of proof of loss herein required."

This exact clause was recognized as a valid provision for standard fire insurance policies in *Howard v. Reserve Insurance Co.* (1969), 117 Ill.App.2d 390, 254 N.E.2d 631. The Court in *Howard* also adopted five criteria proposed in the case of *Home Mutual Insurance Co. v. Stewart* (1940), 105 Colo. 516, 100 P.2d 159, delineating how and when a notice of election to repair or pay under such an option clause is effective. The criteria are as follows:

(1) It must be made (the option clause must be exercised) within a reasonable time after the damage or loss has occurred to the insured.

(2) It must be clear, positive, distinct and unambiguous.

(3) The repairs or replacements must be made within a reasonable time.

(4) It cannot be coupled with an offer of compromise or be made for the purpose of forcing a compromise, but it must be an election made with no alternative.

(5) When the election is made, the repair or replacement must be suitable and adequate.

■■ Accepting all of plaintiff's well pleaded facts as true, as we must in assessing whether its complaint states a cause of action (*Tanner v. Solomon* (1965), 58 Ill.App.2d 134, 206 N.E.2d 528), we think defendants' arguments must fail. The complaint has alleged an agreement between the plaintiff and the Herberts whereby the plaintiff was to seek adjustment of the Herberts' loss. Further, the complaint alleges that the defendants had knowledge of plaintiff's capacity and proposed a settlement agreement whereby they would pay $4900 to the Herberts. This proposal was allegedly accepted by the Herberts. Subsequently, the defendants proceeded to repair the premises. We cannot say that in so acting the defendants did not couple their election to repair with an offer of compromise or that their notice of election was made without an alternative, as required under criterion (4) as set out above.

■■ We agree with the defendants that the exercise of an absolute legal right does not subject them to liability. However, none of the cases cited by the defendants involve an alleged settlement agreement as in the in-

stant case. If, in fact, defendants proposed and were accepted on such proposed settlement, we think this was effective as an election to pay rather than repair under the option clause. When such proposal was accepted, as alleged, by the Herberts the plaintiff acquired a right to payment for its services. The defendant could not then "elect" to repair ignoring the settlement agreement and the consequent rights of the plaintiff. To do so would be interference with the "settlement contract" between themselves and the Herberts to the plaintiff's detriment. As the defendants admit in their brief, there is no question but that a remedy exists in Illinois for tortious interference with a contract. (*Krauter v. Adler* (1946), 328 Ill.App. 127, 65 N.E.2d 215.) We think plaintiff's complaint sets forth sufficient allegations to state a cause of action for such tortious interference.

■■ Finally, we note that defendants argue that plaintiff's failure to furnish proofs of loss to defendant, Market Insurance Company, as required by the contract, in some way deprives plaintiff of his right to a fee. We do not agree. We think in making the alleged settlement agreement before any proofs of loss were submitted, the defendants can be deemed to have waived such proofs. Further, we note that defendants' "election" to repair and the subsequent actual repairs were undertaken despite the fact that no proofs of loss were submitted. We think this indicates that defendants were not relying on any such proofs.

Reversed and remanded.

DEMPSEY and McNAMARA, JJ., concur.