Filed 2/28/14  Meuser v. Allstate Ins. Co. CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| ROBERT MEUSER et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>        Defendant and Respondent. | A136243<br><br>(Alameda County<br>Super. Ct. No. HG07355325) |

The trial court granted Allstate Insurance Company (Allstate) summary judgment in a bad faith action brought by insured homeowners, Robert and Patricia Meuser, arising from Allstate's handling of their fire loss claims.  We affirm the judgment, but reverse an ancillary order awarding sanctions against the Meusers' attorney.

## BACKGROUND

On September 10, 2003, an accidental fire damaged the Meusers' home in Newark, California.  Allstate insured the home and contents for fire damage under a homeowner's policy.  The Meusers' policy included coverage for repair or replacement of the building structure, replacement of the Meusers' damaged or destroyed personal property, and reimbursement for the Meusers' temporary living expenses for up to 12 months after the fire.

### Structural Loss

Allstate initially estimated the actual cash value (ACV) of the structural loss for the Meusers' 942 square-foot home at $125,000 in September 2003, and put the full

1

replacement cost at $127,688.99.[1]  In October 2003, the Meusers hired Nehi Construction & Sons ("Nehi"), a general contractor that participated in Allstate's recommended vendor program, to repair their fire damage.  Nehi agreed to repair the house for approximately the amount of Allstate's structural repair estimate, in an estimated six months' time.  Allstate wrote checks to the Meusers totaling $125,000, the amount of its replacement cost estimate less depreciation, and agreed to repay the depreciation when repairs were complete.

Due to various delays, including disputes between Nehi and the Meusers over the building plan and scope of the work, Nehi was unable to complete the structural repair within the estimated six months.  By March 2005, the repairs still were incomplete, and Nehi refused to continue working with the Meusers.  Allstate advised the Meusers of this by a letter dated March 7, 2005.  The March 7 letter stated Nehi had agreed to refund $28,643.68 in payments it received for work not completed, and pay $10,340 to the Meusers for five and a half months of additional living expenses.  According to Allstate, the March 7 letter merely repeated the Meusers' earlier representation that Nehi had agreed to reimburse them for five and a half months of living expenses due to the repair delays.[2]  In February, Allstate had paid the Meusers for five months of additional living expenses beyond the 12 months provided in the policy, which it characterized as "our portion" of the agreement that the Meusers would receive additional living expenses due to the delay in making repairs.

---

[1] ACV reflects a deduction for the depreciation in the value of the property.  Under the policy, Allstate initially owed the insureds the ACV.  Subject to applicable policy limits and exclusions, the Meusers could then recover the withheld depreciation by replacing or repairing their property within 180 days and submitting their receipts to Allstate.  This is the standard process for making payments under a replacement loss policy, as explained in *Fraley v. Allstate Ins. Co.* (2000) 81 Cal.App.4th 1282, 1287–1289.

[2] When Nehi undertook to perform the repairs within six months at the agreed cost, Allstate advised Nehi and the Meusers that if the repairs extended beyond May 10, 2004 due to Nehi's failure to expedite them, the Meusers' additional living expenses would become Nehi's responsibility.

After Nehi withdrew, Allstate paid additional amounts (not in its initial estimate) for repairs to the driveway, walkway and foundation, and for permits and rough plumbing. Although repairs were incomplete, Allstate also paid the depreciation withheld from its initial payment. At that point, Allstate had paid the Meusers $185,190.85 for structural repairs to the home. Allstate made a further payment to the Meusers of $28,643.68 in November 2006 after their attorney asserted Nehi had failed to refund them that amount for work the contractor failed to complete, as it had promised when it withdrew.

### Contents Claim

In April 2004, after completing its estimate of the contents loss, Allstate paid the ACV of the Meusers' damaged items. A few months later, Allstate made an additional payment for items inadvertently left off its estimate. When the Meusers provided Allstate with receipts showing they had replaced some of the damaged contents, Allstate reimbursed them for the (higher) replacement cost. In April 2005, the Meusers told Allstate they would submit no additional requests for depreciation reimbursement. In total, Allstate paid $88,485.88 on the Meusers' contents claim.

### Additional Living Expenses

Because of the extensive fire damage, Allstate paid for alternative accommodations (first a hotel and then a rental home). Although the policy provided temporary housing benefits only up to 12 months, Allstate eventually paid for 17 months of benefits, at a cost of $49,254.60.

### Trial Court Proceedings

The Meusers commenced this action against Allstate on November 8, 2007 and filed a First Amended Complaint (FAC) on November 30, 2007, alleging causes of action for (1) breach of contract (based on the policy); (2) breach of contract (based on Nehi's asserted promise to pay $10,340 in temporary housing expenses); (3) bad faith; (4) interference with the Meusers' "protected property interest" in their Allstate policy; (5) promissory fraud; (6) fraud and deceit; (7) violation of Insurance Code section 2057 (based on failure to timely refund the $28,643.68 in unearned monies paid to Nehi and

the $10,340 in housing expenses); and (8) violation of Business and Professions Code section 17200.

On April 14, 2008, Allstate moved to compel appraisal of the Meusers' loss, pursuant to Insurance Code section 2071,[3] and for a stay pending completion of the appraisal. The motion was granted. While the appraisal was pending, Allstate made a supplemental payment of $11,787.37 for landscaping repair and damage to appurtenant structures, bringing its total payments under its structure coverage to $196,978.22.[4] Shortly before the appraisal hearing, the Meusers accepted an additional $2,750 in final settlement of their contents claim, representing the value of four appliances left off Allstate's estimate. The appraisal panel assessed the cost to repair the structure at $209,189.54. Having previously paid $196,978.22 under their structure coverage, Allstate paid the balance of $12,211.31 on July 6, 2009.[5]

On October 7, 2009, the Meusers filed a supplemental complaint alleging additional wrongs by Allstate committed after the suit was filed. The supplemental complaint made a series of allegations concerning Allstate's conduct in the litigation and other actions that, according to the complaint, supported the causes of action alleged in

---

[3] Insurance Code section 2071 establishes certain required provisions for fire insurance policies issued in this state, including a mandatory appraisal process in the event of a disagreement as to the ACV or amount of a loss. Each side picks an independent appraiser and the appraisers must either agree on an umpire or one is selected by the court. No suit may be maintained absent compliance with this requirement.

[4] Allstate agreed to the supplemental payment on April 14, 2009, but due to an internal mix up did not overnight the check to the Meusers' attorney, John Shepardson, until May 8. On May 1, Shepardson gave notice of an exparte application for an order directing Allstate to make the payment, asserting the funds were urgently needed to pay expert expenses related to the upcoming appraisal hearing. The trial court denied the application on May 4 and issued an order to show cause to Shepardson why he should not be sanctioned "under the circumstances pertaining to the filing of the Application." Over Shepardson's objection, the court imposed sanctions of $1,500 against him by order entered on June 22, 2009. We address the sanctions award, *post*.

[5] Allstate's stated total structure payments add up to one cent less than the amount of the appraisal award.

4

the FAC and reflected Allstate's lack of good faith toward the Meusers. Allstate moved to strike portions of the supplemental complaint and, while that motion was pending, moved for summary judgment on the FAC.

The trial court granted Allstate's motion to strike on January 25, 2010, finding a majority of the supplemental allegations concerned privileged litigation conduct, or otherwise failed to state any colorable claim for relief against Allstate. On July 9, 2010, the court also granted summary judgment for Allstate on the FAC. The court found there was no triable issue of material fact with respect to whether Allstate had paid the Meusers all amounts due to them under the structure coverage of the policy as conclusively established by the appraisal panel, and no triable issue with respect to Allstate's fulfillment of its contractual obligation to provide coverage for the Meusers' personal property losses and temporary housing expenses. It found no material fact issue with regard to whether Allstate could be found liable for any alleged promise made by Nehi, or whether its adjusters had behaved unreasonably or committed bad faith in handling the Meusers' claims. Based largely on the same findings, it rejected the Meusers' claims for interference with a protected policy interest, promissory fraud and deceit, violation of Insurance Code section 2057 (delay in payment of funds Nehi promised to pay), unfair business practices, and punitive damages. It declined to consider the Meusers' unpleaded claims that Allstate breached the policy or acted in bad faith by failing to give notice of the possible presence of asbestos or pay asbestos remediation benefits. The court denied Allstate's ensuing motion to amend the summary judgment order to encompass the portions of the supplemental complaint not stricken by its January 25, 2010 order.

Following the trial court's summary judgment rulings, the Meusers moved to disqualify the trial judge making the rulings, Judge John True III, for cause under Code of Civil Procedure section 170.1. A specially appointed judge from Monterey County

5

denied the motion by order filed on November 17, 2010. The Meusers did not file a petition for a writ of mandate from that ruling. (Code Civ. Proc., § 170.3, subd. (d).)[6]

Allstate separately moved for summary judgment on the remaining allegations of the supplemental complaint. The trial court denied that motion without prejudice, but found the supplemental complaint defective on its face because it asserted no causes of action as required by Code of Civil Procedure section 425.10. Accordingly, the trial court struck the supplemental complaint, but allowed the Meusers leave to file a First Amended Supplemental Complaint (FASC) so long as it (1) contained only the allegations asserted in the supplemental complaint that were not stricken by the January 25, 2010 order, and (2) asserted no causes of action other than those asserted against Allstate in the FAC. The trial court authorized Allstate to file a motion for summary judgment of the FASC.

The Meusers filed their FASC on August 19, 2011, asserting the same causes of action as the FAC, except the contract cause of action based on Nehi's alleged promise to pay their living expenses, and the claim for violation of Insurance Code section 2057. Allstate moved for summary judgment of the FASC on March 14, 2012, and the motion was granted June 1, 2012. The court dismissed several of the Meusers' allegations because it had previously ordered them stricken in its January 25, 2010 order, or they concerned matters occurring before the filing of the FAC on November 30, 2007. It found no triable issues of material fact as to claims attacking the fairness of the appraisal proceeding and award, and no evidence supporting claims asbestos was present on the Meusers' property, its presence was concealed by Allstate, or the Meusers suffered loss or injury as a result.

---

[6] Code of Civil Procedure section 170.3, subdivision (d) provides in pertinent part: "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding." The denial of a disqualification motion is neither directly appealable nor reviewable on appeal from the subsequent judgment. (*People v. Hull* (1991) 1 Cal.4th 266, 270.) Accordingly, we do not address the Meusers' claims of judicial bias on the merits.

6

A judgment in favor of Allstate on all claims was entered on June 26, 2012, and this timely appeal followed.

## DISCUSSION

The Meusers contend the trial court erred in failing to find triable issues of fact as to whether Allstate breached the contract and acted in bad faith and/or committed fraud by (1) "constructively" invoking its option under the policy to undertake its own repair of the property and then failing to complete it; (2) concealing asbestos benefits and documents from the Meusers; (3) failing to provide additional living expense benefits due under the policy; (4) underpaying contents losses; (5) failing to pay monies promised to the Meusers by its agent, Nehi; and (6) underestimating the cost of the structural repair. In addition, the Meusers maintain the trial court abused its discretion in ordering sanctions against attorney Shepardson. We agree with the latter contention, as discussed below.

We review the trial court's rulings on the summary judgment motions, and its interpretation of the insurance policy, de novo. (*Fraley v. Allstate Ins. Co.*, *supra*, 81 Cal.App.4th at p. 1289.)

### Applicability of *Le Francois*

As a threshold matter, the Meusers contend the trial court lacked "jurisdiction" to grant Allstate's motion for summary judgment on the FASC because it was an improper motion for reconsideration unsupported by new facts or law. (See *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107 (*Le Francois*) [Code of Civil Procedure sections 437c and 1008 limit the parties' ability to file repetitive motions, but not the court's ability to reconsider prior interim orders on its own motion].) We review the trial court's decision to allow a party to file a renewed or subsequent motion for summary judgment for abuse of discretion. (*Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 72.)

The Meusers correctly point out Allstate filed three motions challenging the allegations contained in the FASC before bringing its final, successful motion for summary judgment. Allstate first moved to strike various allegations from the

7

supplemental complaint. That motion was granted in substantial part. Then Allstate moved to amend the order granting summary judgment on the FAC to encompass the remaining allegations of the supplemental complaint. That motion was denied, but without prejudice to Allstate filing a new motion for summary judgment of the supplemental complaint. Allstate, thereafter, did bring such a motion, which the court also denied without prejudice after finding the supplemental complaint was defective for consisting solely of allegations without any causes of action, and giving the Meusers leave to file an amended supplemental complaint.

*Le Francois* has no application to these procedural facts. Allstate's successful motion to strike improper allegations from the supplemental complaint did not preclude it from attacking the remaining allegations by means of a motion for summary judgment, any more than a party's successful demurrer to a breach of contract cause of action would preclude the party from later seeking summary adjudication or summary judgment of a negligence claim pleaded in the same complaint. Further, the two dispositive motions Allstate filed after the granting of the motion to strike were both denied by the trial court on procedural grounds without reaching the merits of Allstate's claim that the surviving allegations of the supplemental complaint raised no triable issues of material fact, as the trial court expressly found in its final order granting summary judgment. Both of the earlier denials were made specifically *without prejudice* to Allstate's right to file a future dispositive motion. Under these circumstances, Allstate cannot be faulted under *Le Francois* for bringing repetitive motions, and the trial court cannot be held to have abused its discretion in deciding the final motion for summary judgment on its merits.

**Self-Repair Option**

Condition 4 of the Meusers' homeowner's policy stated: "In the event of a covered loss, we have the option to: [¶] a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or [¶] b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5 'How We Pay for A Loss.' [¶] Within 30 days after we receive your signed, sworn proof of loss we will notify you of the option or options

8

we intend to exercise." The Meusers maintain there are triable issues of material fact as to whether Allstate, rather than paying for the damage to their home under Condition 4(b) instead "constructively" invoked its option to repair the home itself under Condition 4(b).

The Meusers' FAC made no allegation Allstate elected to self-repair the home rather than pay for the damage, constructively or otherwise. When the Meusers sought to advance this theory for the first time in their supplemental complaint and FASC, the trial court granted summary adjudication of it because, under Code of Civil Procedure section 464, subdivision (a), a supplemental complaint can only allege facts occurring after the former complaint was filed, in this case November 30, 2007. The Meusers' theory was based on allegations concerning the conduct of Allstate adjuster, Tom Bearman, in or about 2004.[7] These were not properly pled in a supplemental complaint.

The Meusers now claim the court should have ignored the label they placed on the FASC, and treated it as if it was a second amended complaint. There was no basis for doing so. While their original supplemental complaint was still pending, the Meusers had in fact filed a motion for leave to file a second amended complaint that included the same self-repair allegations contained in the supplemental complaint, along with many other new allegations concerning pre-2007 conduct. The trial court denied that motion on January 20, 2011, in part because summary judgment had already been granted as to the FAC by that time. Thus, by the time the Meusers filed the FASC in August 2011, their attempt to plead the same allegations in a proposed second amended complaint had already been denied. They cannot now claim they merely mislabeled the FASC as a supplemental complaint or that they had obtained leave to file an amended as opposed to a supplemental pleading.

The Meusers' claim also fails on the merits. They fail to cite any legal authority recognizing a "constructive" election by an insurer to self-repair. (Cf. *Howard v. Reserve*

---

[7] The FASC alleged Bearman effectively controlled Nehi's work and made unauthorized changes in the engineering design that "possibly" caused Nehi to walk off the job. Since Nehi withdrew in March 2005, these allegations necessarily involved conduct occurring before the FAC was filed.

*Ins. Co.* (Ill.App. 1969) 254 N.E.2d 631, 635 [notice of election to self-repair must be "clear, positive, distinct and unambiguous"].) Allstate's actions in preparing a damage estimate, seeking an appraisal hearing, and advancing nearly $200,000 to the Meusers for structural repairs are completely inconsistent with any election to self-repair or replace the property. Robert Meuser's admission that he hired Nehi to perform the repairs is inconsistent with such an election. The fact Allstate monitored the demolition and repair effort for which it was paying the bills, became involved in relaying communications between Nehi and the Meusers (often in response to the Meusers' inquiries and complaints), or paid some engineering consulting fees directly to avoid contractor overhead costs, does not mean it assumed responsibility for restoring the property to its former condition without regard to policy limits. An insurer that agrees to pay for repairs does not assume unlimited liability for their completion merely by exercising some oversight over how the money is being spent or mediating between its insureds and the contractor the insureds have chosen to perform the repairs.

For all of these reasons, summary adjudication was properly granted on the Meusers' self-repair theory.

**Asbestos Issues**

The Meusers maintain Allstate concealed asbestos benefits available under their policy, failed to produce documents relevant to a potential claim for such benefits, and caused them to lose out on approximately $6,000 in asbestos-related policy benefits. This was based primarily on (1) Bearman's testimony he decided there was no reason to perform asbestos testing or abatement of the Meusers' home since the home was to be demolished down to the foundation, even though he thought there "probably" was some asbestos in the home due to its age; (2) Bearman's declaration stating the Meusers' claim file included unused, preprinted forms for ordering asbestos testing that he prints out at the beginning of every structure claim to save time; and (3) a declaration from the Meusers' asbestos expert estimating the cost to test for and abate asbestos in the Meusers' home before demolishing it. The Meusers' expert's declaration also stated that under applicable laws and regulations, the home should have been tested before demolition and,

10

if not tested, would have been presumed to require certain abatement measures during and after demolition.

As an initial matter, the policy provided no "asbestos benefits." It did cover demolition costs and presumably would have covered asbestos testing or abatement required in connection with demolition, if any asbestos had been present at sufficient levels. There was no actual evidence any asbestos had been present at a level requiring abatement upon demolition. The Meusers' own expert found no trace of asbestos at the site, and there was no evidence the Meusers suffered any injury or damage as a result of the lack of testing or abatement. As for nondisclosure of "claims-related" documents, the trial court correctly found no violation. The blank, unused forms in issue were not claim-related documents as defined in the standard form language that was part of Allstate's policy. (See Ins. Code, § 2071.) As the trial court found, there was no evidence to support any cause of action based on Allstate's alleged concealment of asbestos benefits or documents.

### Nonpayment of Additional Living Expense Benefits

The Meusers contend Allstate owed them additional living expense protection beyond the 17 months they have received, apparently in the amount of $500. We find nothing in the policy to indicate Allstate's contractual obligation to pay for living expenses extended beyond 12 months, which the Meusers concede Allstate paid them. While the Meusers cite language in the policy referring to Allstate's ability to broaden coverage by adding new features to existing coverages at no charge *during the premium period*, Allstate did not "broaden" its temporary living expense coverage by gratuitously paying the Meusers for five months of additional living expenses after they suffered a fire loss. Although the Meusers believe Allstate should have paid $100 more per month of expenses for the five additional months it agreed to fund beyond its 12-month contractual obligation, that creates no issue of material fact as to whether Allstate breached the contract.

11

**Underpayment of Contents Loss**

The Meusers contend Allstate failed to include shipping costs incurred in replacing certain items by online purchases when determining the ACV of contents covered by its personal property protection. This coverage again involves a two-step process like that applicable to structural damage, in which Allstate pays the ACV of a destroyed item of personal property up front, which includes a depreciation deduction. If the insureds actually replace the property in a timely manner and show what they paid for it, they receive the difference, including shipping charges. However, the insurer does not pay for shipping charges *unless they are actually incurred* as a result of the actual replacement of destroyed property. (See *Cecena v. Allstate* (9th Cir. Nov. 18, 2009, No. 08-16710) 2009 U.S. App. LEXIS 25363 [addressing the identical argument].) There is no evidence in the record Allstate failed to pay any shipping charges that were actually incurred and documented by the Meusers to replace personal property damaged or destroyed in the fire. Allstate's refusal to pay *estimated* shipping costs in advance of purchase is not a breach of its obligations under the policy or an act of promissory fraud or bad faith.[8]

**Funds Offered by Nehi**

The Meusers contend Allstate is liable for breach of contract for not paying them the $10,340 for additional living expenses that Nehi apparently agreed to pay when it withdrew from the project, but ultimately failed to pay. We find no evidence in the record establishing that *Allstate* ever promised this amount to the Meusers or guaranteed Nehi's promise. In fact, when Allstate sent the Meusers a check for five months of

---

[8] The policy states: "If you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation." The insured may then recover the depreciation ("cost in excess of actual cash value") if they replace the damage or destroyed property "within 180 days of the actual cash value payment." Subject to policy limits, an insured who actually replaces the lost personal property with "similar property of like kind and quality" after receiving payment of its ACV receives the full "amount actually and necessarily spent to . . . replace the property . . . ." The latter would generally include shipping costs.

additional living expenses (the time estimated for completion of the project) on February 15, 2005, Allstate's homeowner manager wrote to them, "Joe Nehi has agreed to reimburse you for five and a half months of additional living expenses," and described the enclosed check as "our portion of this agreement." That is inconsistent with any agreement by Allstate to pay Nehi's portion. We also find no evidence of a principal-agent relationship between Allstate and Nehi based merely on the fact Allstate had Nehi on its approved vendor list or acted as an intermediary between Nehi and the Meusers to facilitate completion of the project.

### Underestimation of Structural Repair Cost

The Meusers contend Allstate breached the contract and committed bad faith and fraud by underestimating the cost to repair the structure in 2003. Initially, based on the size, configuration, and location of the home on a flat lot, Allstate prepared a rough estimate of the ACV of the structural loss at $125,000 and the full replacement cost at $127,688.99. A real estate appraisal based on using comparables to estimate the pre-loss value of the property, less the value of the land, confirmed that estimate. After being hired by the Meusers in October 2003, Nehi offered to repair the house for $127,309.51. Allstate issued checks to the Meusers totaling $125,000, with the balance of $2,309.51 to be paid when the repairs were complete. As further costs were incurred and disputes arose as to the building plans and other matters, Allstate made additional payments. By the time Nehi pulled out, Allstate had paid $185,190.85 in total for the structural repairs. Allstate sought to invoke the policy's appraisal process since the parties were at an impasse, and paid the Meusers an additional $28,643.68 for payments they had made to Nehi. Because the Meusers declined to submit the dispute to appraisal, Allstate moved successfully for an order compelling appraisal after this litigation began. The June 15, 2009 final appraisal award, signed by all three panel members, included $192,008.49 for structural repairs, as well as 17,181.05 for other structures and landscaping. Allstate paid the Meusers the balance of structure benefits owed under the policy as established by the appraisal on July 6, 2009.

The Meusers characterize the amount of Nehi's offer to repair the house as Allstate's "offer[] to settle the [Meusers'] claim," and then assert in conclusory fashion that this offer was "unreasonably low," in violation of insurance law and regulations. (See Ins. Code, § 790.03 (h)(5) [defining as an unfair act or practice in the insurance business, "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims . . ."].)  We find the mere discrepancy between the amount initially estimated and the amount found after appraisal is insufficient as a matter of law to show Allstate violated Insurance Code section 790.03, breached the contract, or engaged in bad faith or fraud in its handling of the Meusers' claim.  (See *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 349–350, disapproved on other grounds in *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 724, fn. 7 [conclusionary expert opinion that structural repair estimate was inadequate does not create triable issue of material fact as to bad faith]; *Fraley v. Allstate Ins. Co.*, *supra*, 81 Cal.App.4th at pp. 1291–1293 [$249,500 difference between original repair estimate and arbitration award insufficient to create triable issue of fact over bad faith].)

Here, Allstate paid more than its initial estimate of the structural loss when it became clear Nehi could not complete repairs to the Meusers' satisfaction for the amount estimated.  By March 22, 2005, before this suit was filed, Allstate had paid the Meusers approximately 88 percent of the eventual appraisal award.  Allstate sought an independent appraisal as soon as it was clear an impasse had been reached over the further amount of its obligation, it was not responsible for the delay in beginning the appraisal process, and it promptly paid the balance owed to the Meusers after the appraisal award was issued.  The trial court correctly held no triable issues of material fact arose from Allstate's initial underestimate of the Meusers' structural loss.

## Attorney Sanctions

The trial court's order to show cause and order awarding sanctions failed to describe the conduct determined to constitute a violation or explain the basis for the sanction imposed, as required by Code of Civil Procedure section 128.7, subdivisions (b)(2) and (e).  Further, the court erred in requiring the sanction to be paid to the opposite

14

party rather than to the court.  (Code Civ. Proc., § 128.7, subd. (d)(2); *Interstate Specialty Marketing, Inc. v. ICRA Sapphire, Inc.* (2013) 217 Cal.App.4th 708, 717.)  Accordingly, we reverse the trial court's June 22, 2009 order awarding sanctions of $1,500 against attorney Shepardson.

## DISPOSITION

The judgment entered on June 26, 2012 is affirmed.  The June 22, 2009 order awarding sanctions is reversed.  Costs are awarded to respondent.


_____
Becton, J.*


We concur:


_____
Margulies, Acting P.J.


_____
Dondero, J.


* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


15